Effie SHANKLIN, Plaintiff-Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Appellant.

No. 31311.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1963.

Rehearing Denied Oct. 14, 1963.

Gerald D. Morris, St. Louis, for appellant.

Fred B. Whalen, Whalen, O'Connor, Grauel & Sarkisian, St. Louis, for respondent.

BRADY, Commissioner.

The parties will be referred to by their designation in the trial court. Plaintiff's action for damages resulting from injuries she sustained while a passenger on one of defendant's streetcars resulted in a jury verdict for the defendant. Plaintiff's timely motion for new trial was sustained for prejudicial error in the giving of instructions 14 and 11. The facts will be stated in the light required by the defendant's jury verdict and limited to those bearing upon the giving of these instructions.

The plaintiff was the last of 6 or 7 passengers to board the streetcar as it was halted at a regular stop. She had nothing in either hand as she boarded except the money for her fare. She dropped her fare into the box without stopping and all of the seats being full, continued walking toward the rear of the streetcar there to join others already standing. After the plaintiff boarded, the defendant's operator waited another 15 seconds for the electric stop light to change to green. The aisle was clear and the plaintiff was walking naturally, swinging her arms and without holding onto any of the handholds, upright poles or stanchions that were available to her. The operator then released the brake pedal and pressed down on the power pedal. There was a slight incline in the direction he was traveling. When he had gone about 30 feet forward and had reached a speed of about 5 miles per hour, he saw the plaintiff "falling forward past me." She came in contact with the front of the streetcar with her head striking the rear view mirror and her body hitting the fare box. Plaintiff seemed "off balance" to defendant's operator. The plaintiff and her witnesses had testified to a sudden jerk of the streetcar which caused plaintiff to be propelled backward down the aisle to the front of the streetcar. The defendant's operator denied that any jerk occurred and testified he in no way changed the application of power nor did the streetcar slow or stop. The defendant's witness, Hollerbach, testified that a streetcar could start with a jerk only if something was wrong with it.

Instruction 11 was offered by the defendant and, as given by the court, reads as follows:

"The Court instructs the jury that if you find that the jerk and jolt referred to in the evidence was not a sudden, unusual and violent jerk and jolt, but was usual and ordinary movement such as usually and customarily occurs in proper operation of a streetcar in city traffic, then you cannot find in favor of plaintiff and your verdict must be for the defendant."

Defendant's theory as to plaintiff's contributory negligence was based upon plaintiff's admitted failure to use the handholds, posts or stanchions provided for the assistance of passengers. This issue was submitted to the jury by instruction 14 which first instructed the jury that plaintiff had a duty to exercise "ordinary care" for her own safety and correctly defined that term. It then proceeded as follows:

" * * * In this connection you are further instructed that if you find and believe from the credible evidence that the plaintiff boarded said streetcar while it was stopped and that the streetcar started up after plaintiff had boarded and was moving as plaintiff walked toward the rear of the streetcar, and if you find that there were upright posts, hand holds (sic), or stanchions provided for plaintiff and within reach and available to her and that she could reach from one to the other as she walked toward the rear of said streetcar, and if you find that plaintiff did not take a hold (sic) of the upright posts, hand holds (sic), or stanchions as she walked toward the rear of said streetcar and that had she done so she could have maintained her balance as she walked through the streetcar even though the streetcar jerked in the manner described by plaintiff, and if you find that her failure to avail herself of these upright posts, hand holds (sic), or stanchions and to hold to them as she

walked through said moving streetcar was negligence on her part, and if you find that such negligence, if any, directly caused or directly contributed to cause plaintiff's damages, if any, then you are instructed that plaintiff was guilty of contributory negligence and she cannot recover herein and your verdict must be in favor of the defendant * * *."

It is contended that the giving of instruction 11 was prejudicially erroneous for the reason that there was no evidence to support it and also because it was repetitious of instruction 10. With regard to instruction 14, it is alleged that instruction injected a false issue of contributory negligence into this case. The four reasons stated in support of that contention fall more logically into three general categories. The first of these is that instruction 14 erroneously permits the jury to speculate that plaintiff COULD (that word is capitalized throughout the treatment of this point in the brief) have maintained her balance even though the streetcar jerked in the manner she described in her evidence if she had used the upright posts, handholds or stanchions. The second deals with the failure of the instruction to hypothesize facts from which, as plaintiff states in her brief, "* * * that plaintiff in the exercise of ordinary care knew, or should have known that the streetcar was likely to jerk while she was walking in the aisle." The last is that this instruction omits an essential element in that it fails to require the jury to find that the plaintiff, having actual or constructive knowledge or appreciation of the danger of injury to herself, failed to use the handholds, upright posts or stanchions.

In the consideration of those allegations of prejudicial error arising from the giving of instruction 11, it is necessary to view that instruction in the light of instructions 7, 8 and 10 also given in this case. Instruction 10 reads as follows:

"The Court instructs the jury that if you find and believe from the evi-

dence that on the occasion in question, the streetcar mentioned in the evidence did not lurch and jerk violently and suddenly and in an unusual and violent manner, then your verdict must be in favor of the defendant."

The defendant contends that instruction 10 is a converse of instruction 8. In instruction 8, it is hypothesized that the defendant's operator caused the streetcar to "* * * lurch and jerk violently and suddenly in an unusual and violent manner * * *" when the operator knew or should have known by the exercise of the highest degree of care that plaintiff was walking in the aisle. It also required the jury to find that as a direct result thereof the plaintiff was injured by being thrown against the fare box and windshield, that this "* * * sudden, violent and unusual jerk and lurch was negligent * * *" and "* * * that plaintiff was injured as a direct and proximate result thereof * * *" and concludes by directing a verdict based upon these findings in favor of the plaintiff.

Instruction 7 was also offered by the plaintiff and those parts of it pertinent to the consideration of this allegation of error read as follows:

"* * * The Court further instructs you that if you find and believe from the evidence that the defendant, by and through its agent and servant in charge of and operating the streetcar mentioned and described in the evidence, and upon which plaintiff was a passenger, caused the same to lurch and jerk violently and suddenly in an unusual and violent manner, if so, and that as a direct result thereof the plaintiff's body was caused to be thrown forward against the fare box and frame work (sic) around the windshield and she was injured as a direct result thereof, if so, then you are instructed that such facts (if you believe them to be true) are sufficient circumstantial evidence upon

which the jury may infer that the defendant was negligent *and you may so find* unless you find and believe from other evidence and from all the facts and circumstances in evidence that said sudden, violent, and unusual jerk and lurch, if any, of said streetcar was not due to negligence of the defendant." (Emphasis supplied.)

There is no point raised as to the giving of both instructions 7 and 8 even though the emphasized portion of instruction 7 would seem to make clear its verdict directing nature. It is therefore unnecessary for this court to determine whether one submits plaintiff's case upon a theory of res ipsa loquitur and the other upon a theory of specific negligence. It is equally unnecessary to comment upon the propriety of giving two verdict-directing instructions in this case. As stated, both of these instructions were offered by the plaintiff. It is elementary that the defendant has the right to submit a converse of whatever the plaintiff submits as grounds for recovery. It is equally fundamental that such converse instructions need not be supported by the evidence since the jury is entitled to find that the facts plaintiff contends justify her recovery did not, in fact, occur. Instruction 7 appears to be a submission upon the theory of res ipsa loquitur, allowing the jury to infer negligence from an unusual occurrence. In this case, the unusual occurrence would be the jerk of the streetcar. It is therefore obvious that instruction 11 is not repetitious of instruction 10. The latter submits a converse of instruction 8 by allowing the jury to find that the streetcar did not act in the manner submitted in that instruction. Instruction 11 submits a converse of instruction 7 by allowing the jury to find that the unusual jerk, upon which a res ipsa loquitur submission must be based, did not occur. It is true that instructions 10 and 11 are somewhat inartfully drawn. This was in part the result of the wording of instructions 7 and 8, both of which refer to a sudden,

violent and unusual jerk in almost identical language. We are not to be understood as approving of the form of instructions 7, 8, and 10, nor of the trial court's action in giving both instructions 7 and 8. Those matters are not now presented for our ruling. Suffice it to say that under the circumstances presented by this appeal and due to the giving of both instructions 7 and 8, we cannot agree that the giving of instruction 11 constitutes prejudicial error.

There is no merit to the contention that instruction 14 injected a false issue of contributory negligence into this case. The theory upon which the defendant based its contention that plaintiff was contributorily negligent was clearly stated in the answer, and the major portion of defendant's efforts during the trial were directed toward establishing that issue. It has long been the law in Missouri that failure to hold onto an assist of the type mentioned in the evidence does not constitute contributory negligence as a matter of law but raises a question for the jury. Dougherty v. Missouri R. Co., 97 Mo. 647, 8 S. W. 900. The same result was reached in the analogous situation of one disembarking from a train without using the hand assists provided. Stakebrake v. Union Pac. R. Co., Mo.App., 185 S.W. 1166, 1.c. 1168 [4]. Under the factual situation here, whether the plaintiff was negligent in failing to hold onto the handholds, posts or stanchions was a question for the jury to determine under proper instructions and cannot be said to be a false issue. Dougherty v. Missouri R. Co., supra.

The contention that this instruction erroneously permits the jury to speculate that plaintiff could have maintained her balance even though the streetcar jerked in the manner described in the testimony if she had used the upright posts, handholds or stanchions available to her, is likewise without merit. As this point is developed in the argument portion of her brief, the plaintiff complains of the failure of the

instruction to limit the charge of negligence by the inclusion of a statement of the proper standard of care. In other words, plaintiff would have inserted the words "in the exercise of ordinary care for her own safety" either at the beginning or at the end of this submission in the instruction. In view of the language in the first paragraph of instruction 14, there is no merit to plaintiff's contention. That paragraph reads as follows:

> "The Court instructs the jury that it was the duty of the plaintiff to exercise ordinary care for her own safety while she was a passenger on the streetcar mentioned in the evidence, and by the term ordinary care is meant that degree of care that an ordinary prudent person would use under the same or similar circumstances."

Having so clearly stated the degree of care incumbent upon the plaintiff in the opening paragraph of instruction 14, it was not necessary to again state that degree of care by adding it to the hypothesizations in the instruction as plaintiff contends.

The two remaining reasons why instruction 14 should not have been given have reference to the general subject of the knowledge, or lack of it, on the part of the plaintiff that her omission to use these assists might reasonably be expected to result in some danger of injury to her. These assignments can best be understood if considered together. In so doing, the wording of the submission requiring the jury to find that this plaintiff could have maintained her balance if she had used these assists " * * * even though the streetcar jerked in the manner described by plaintiff * * *" should be kept in mind. The effect of this submission was that for the purposes of passing upon the issue of plaintiff's contributory negligence, the jury was to adopt the plaintiff's evidence as to the streetcar jerking, the severity of that jerk and the other circumstances surrounding the jerk as testified to by the plaintiff.

The instruction sets out the fact that plaintiff boarded a stationary streetcar, that she was walking when it began to move, that there were handholds, upright posts, and stanchions available for her use, that she did not use them, that had she used them she would not have fallen, and that the failure to use them was negligence which caused or contributed to cause her injuries. The distinction between such a submission and the submission held erroneous in Voyles v. Columbia Terminals Co., Mo.App., 239 S.W.2d 559, 1.c. 562, upon which plaintiff relies, is obvious. In the Voyles case the submission made only required the jury to find that the plaintiff stepped off the curb and remained standing in the street and that in so standing the plaintiff did not exercise ordinary care for his own safety. As pointed out by this court in the opinion at the local citation given above, there was no hypothesization that had the plaintiff remained on the curb he would not have been struck. The jury was " * * * not required to find any act or omission on the plaintiff's part that contributed to bring about the accident * * *." In the instant case, it was defendant's theory that failure to use the assists provided was the omission to act upon which the jury might base a finding of contributory negligence. Contrary to the instruction in the Voyles case, this instruction clearly sets out the omitted act, hypothesizes that absent that omission the plaintiff would not have been injured, and requires the finding of that omission negligence.

The plaintiff's insistence that in one form or another this instruction should have required the jury to find actual or constructive knowledge by plaintiff that her failure to use these assists might reasonably be expected to result in same danger of injury to her is without merit. Due to the inclusion in the instruction of the wording authorizing the jury to accept the plaintiff's evidence as to the jerk of the streetcar, a requirement of actual or constructive knowledge by plaintiff of the

danger of her act would, in effect, require her to anticipate negligence on the part of the operator in allowing the streetcar to jerk. Compare Mallett v. St. Louis Public Service Co., Mo., 308 S.W.2d 720, l.c. 722, 723 [1, 3]; McLaughlin v. Marlatt, Mo.App., 228 S.W. 873, affirmed McLaughlin v. Marlatt, 296 Mo. 656, 246 S.W. 548, l.c. 553 [8, 9].

The trial court erroneously granted the plaintiff a new trial. Its order should be reversed and the cause remanded to the trial court with instruction to reinstate the verdict and judgment for the defendant. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The cause is remanded to the trial court with instructions to reinstate the verdict and judgment for the defendant.

WOLFE, Acting P. J., ANDERSON, J., and JACK P. PRITCHARD, Special Judge, concur.