**Orlando COLLIER,
Plaintiff-Respondent,**

v.

**BI–STATE DEVELOPMENT AGENCY,
Defendant-Appellant.**

No. 48893.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 1, 1985.

Motion for Rehearing and/or Transfer
Denied Nov. 12, 1985.

Fox, Goldblatt & Singer, Inc., St. Louis, for plaintiff-respondent.

Mark G. Arnold, Kathryn M. Koch, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for defendant-appellant.

SIMON, Presiding Judge.

Bi-State Development Agency (Bi-State) appeals a judgment of the Circuit Court of the City of St. Louis entered pursuant to a jury verdict of $15,000.00 in favor of Orlando Collier (Collier) for personal injuries sustained in a bus collision. In answering, Bi-State pled Collier's contributory negligence as an affirmative defense.

On appeal, Bi-State contends the trial court erred in failing to submit its tendered comparative fault instruction, which is supported by substantial evidence. We disagree. The tendered instruction is not in MAI, but incorporates 1983 Committee Illustration, MAI 32.01(1) and MAI 17.04, and provides as follows:

You must assess a percentage of fault to plaintiff if you believe:

First, plaintiff knew that there was a reasonable likelihood of collision in time thereafter to have grasped the handrail on the bus prior to the collision, but plaintiff failed to do so, and

Second, plaintiff was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

▮ In determining the propriety of an instruction, we view the evidence in the light most favorable to the submission of the instruction. *Hopkins v. Goose Creek Land Co., Inc.*, 673 S.W.2d 465, 467[2] (Mo. App.1984). Collier, fifteen years old, boarded a Bi-State bus at the intersection of Grand and Twentieth Street sometime in the afternoon before 3:00 p.m. Collier sat in a window seat in front of the back door on the side opposite the bus driver. About twenty to twenty-five people were on the bus. The bus, proceeding west on West Florissant, stopped at the traffic signal at the intersection of Pope and West Florissant in the right lane next to the curb lane. Collier was looking out the window at all times and as the bus approached the intersection, he saw another Bi-State bus parked in the right parking lane of West Florissant at a bus stop approximately 1500 feet west of the signal. Collier testified that after the signal changed the bus on which he was riding was moving into the parking lane and it appeared that the bus would pull behind the other Bi-State bus. He estimated that the bus was traveling at a speed of 10–15 miles per hour. Approximately five seconds or more before the moving bus collided with the parked bus, Collier realized that the bus on which he was riding was going to collide with the parked bus. Collier, realizing that the bus would collide with the parked bus, raised his right hand to brace himself, but failed to take hold of the handrail in front of him. His chest hit his wrist and his wrist hit the handrail, fracturing his wrist in two places.

▮ It is undisputed that a common carrier has a duty to exercise the highest degree of care to safely transport its passengers and to protect them while in transit. *Jackson v. Bi-State*, 550 S.W.2d 228, 232[3, 4] (Mo.App.1977). The duty to act with the highest degree of care does not rise to the level of strict liability or to that of an insurer. *Id.* at 232[4, 5]. However, Bi-State's duty does not excuse Collier from exercising ordinary care for his own safety. *Bond v. Kansas City Transit, Inc.*, 401 S.W.2d 440 (Mo.1966). Further, Bi-State has the burden to prove Collier's contributory negligence and, if supported by substantial evidence, is entitled to an appropriate instruction.

Applying these accepted principles, Bi-State argues that the evidence adduced during trial sufficiently established Collier's contributory negligence in that he

failed to take hold of the handrail between the time he became aware of the danger of collision and the actual collision, and his failure to do so resulted in the injury to his wrist.

In its argument, Bi-State's reliance on *Moutria v. E. St. Louis Ry. Co.*, 76 S.W.2d 427 (Mo.App.1934) is misplaced. In Moutria, the plaintiff, a passenger on defendant's streetcar, observed danger but the danger was unknown to the operator of the streetcar. *Id.* at 429. Here, there is no showing that Bi-State's driver was unaware of the danger. Collier had the right to expect that he observed the parked bus and would act accordingly. Bi-State also relies on *Shanklin v. St. Louis Public Service Co.*, 370 S.W.2d 649 (Mo.App.1963) but *Shanklin* is factually distinguishable. In *Shanklin*, plaintiff boarded the bus and was walking to the rear of the bus, not utilizing any handholds, posts, etc. and when the bus moved forward, plaintiff fell backwards suffering injury. In *Shanklin*, there is no showing that the plaintiff was in a position of safety and that she was aware of any danger. A review of the other cases relied on by Bi-State convinces us that each is distinguishable and of no assistance.

Our research uncovered the case of *Sweeney v. Kansas City Ry. Co.*, 150 Mo. 385, 51 S.W. 682 (1899), which presents a similar factual situation. Sweeney, plaintiff's decedent, a passenger on a gripcar (streetcar), left his seat and told the gripman (operator) that he wanted to get off at 20th Street but the car did not stop at 20th Street. The gripman apparently did not hear Sweeney and did not stop at 20th Street. Sweeney was standing with three other passengers on a running board, where passengers normally stood prior to getting off the car. The gripman was going to stop at 21st Street. A coal wagon had broken down and was blocking part of the track, and the driver of the coal wagon attempted to warn the gripman. A number of the passengers saw the wagon, including a couple of the passengers on the running board, who jumped into a seat in the car. However, Sweeney remained on the running board. The gripcar struck the wagon and Sweeney died as a result of injuries sustained in the collision. The jury returned a verdict of $5,000 for Sweeney's widow. On appeal, the defendant argued that if the gripman could have seen, and heard a warning of danger in time to have stopped his train, Sweeney likewise could have seen and heard it in time to have stepped back into his seat, and in that way have avoided the injury.

In its affirmance of the judgment in *Sweeney*, our Supreme Court stated:

"In answer to this contention it may be said that, even if Sweeney saw the danger in time to have stepped back to his seat, or a place of absolute safety, he had the right to assume that he would be carried safely, and that the gripman would see the obstruction, and stop in time to prevent a collision with the wagon. Nor is a passenger who is confronted by a sudden danger, and fails to exercise what might seem to others the best judgment, in every case guilty of negligence." *Id.* 51 S.W. at 686[4].

■■■ *Sweeney's* vintage has not lessened its precedential value, and thus, we conclude that the *Sweeney* rationale is applicable to the present case. Collier was in a position where he should have been, his seat, and when faced with sudden danger, the collision, he had the right to assume that the bus driver would see the parked bus and avoid it or stop in time to avoid a collision. He may not have exercised the best judgment in Bi-State's opinion, i.e., raising his hand instead of taking hold of the handrail, but that does not constitute negligence under this factual situation. Thus, the tendered instruction does not have substantial evidentiary support. To apply the doctrine of contributory negligence in such a situation should be done with caution, and the duty to take hold of the handrail should be imposed on a passenger in cases clearly calling for its fulfillment. *Moutria, Id.* at 429[2]. Here, Collier's failure to take hold of the handrail is not unreasonable in light of the facts. Ac-

cordingly, the trial court properly refused the instruction.

Judgment affirmed.

STEPHAN, C.J., and CRIST, J., concur.