**Will GEARHART, M.D., Appellee,**

v.

**UNIDEN CORPORATION OF AMERICA, Appellant.**

**No. 85–1091.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1985.

Decided Jan. 9, 1986.

---

**148**

Girard E. Boudreau, Jr., Los Angeles, Cal., for appellant.

Steven G. Schumaier, Clayton, Mo., for appellee.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

ARNOLD, Circuit Judge.

In this products-liability case, the Uniden Corporation of America ("Uniden") appeals from a jury verdict of $25,000 in compensatory and $125,000 in punitive damages awarded to Dr. Wilbur H. Gearhart, who alleged that he sustained permanent hearing damage when he picked up and held to his ear a ringing cordless telephone distributed by the defendant.

Uniden argues that in light of the Missouri Supreme Court's adoption of comparative fault in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo.1983) (en banc), the District Court's refusal to instruct the jury to determine the relative degrees of fault between plaintiff and defendant was incorrect. In addition, defendant argues that the evidence was insufficient to justify the submission of the question of punitive damages to the jury. Also in regard to the punitive-damages award, Uniden challenges the admission of unedited copies of consumer complaints about the cordless telephone, as well as references in plaintiff's closing argument to the defendant's foreign parent corporations, who were not parties to the lawsuit.

We hold that the District Court should have confronted and accepted the defendant's argument that as a result of *Gustafson,* comparative fault applies in strict-liability cases in Missouri. Accordingly, we reverse and remand for a new trial. For this reason, we find it unnecessary to address defendant's challenge to the sufficiency of the evidence on punitive damages. On retrial, however, the District Court should limit the scope of the admissible consumer-complaint evidence and prohibit references to Uniden of Japan, Taiwan, or Hong Kong similar to those made in closing argument at the original trial.

I.

Dr. Gearhart, a 58-year-old psychiatrist, was injured on July 7, 1983, three days after he purchased a new Uniden Model Ex4000 cordless telephone from a neighbor. The handset of the Ex4000 was de-

signed to be used either in its base unit, or portably, as a complete telephone. To function in this second, self-contained mode, the handset's call-alerting device—the part of the phone that rings—uses the same circuitry as the earpiece and rings through the earpiece, apparently at a decibel range of 130 to 140. Below the earpiece is a "standby/talk" switch. To be "on hook" or ready to receive a call in the portable state, the switch must be turned to "standby"; to go "off hook," that is, to answer the ringing phone, the switch must then be turned to "talk." When the handset is in the base unit, however, the on and off hook states are achieved automatically by lifting the handset from the base or replacing it, as with a conventional telephone. Therefore, when the phone is in the base, the switch is supposed to be kept in the "talk" position. On the day of Dr. Gearhart's injury, the handset was in the base, but its switch was on "standby."

The plaintiff testified at trial that he came into the house as the phone was ringing. "I just reached over and put it to my [left] ear as if to answer the phone like any phone, and I had a tremendous blast of sound as if a gun had gone off or something had exploded in my ear." Tr. at III:184. In addition to the pain he immediately suffered, Dr. Gearhart told the jury he has continued to have difficulty hearing, particularly soft-spoken voices and women's voices over the telephone, as well as experiencing a constant fullness in the left ear "like somebody has a thumb or a finger in the ear, deep in the ear." *Id.* at 191.

By the time Dr. Gearhart purchased his cordless telephone, Uniden had, in response to consumer complaints about the loudness of the ring and possible accompanying injury, added warnings to the Ex4000 and its packaging. A small sticker was placed below the handset earpiece, near the switch, stating "Caution: Loud Ring: Move Switch to Talk Position Before Holding Receiver to Your Ear." In addition, a bright red/orange card warning users of the loud ring [1] was placed in the carton on top of the packed phone unit, and the owner's manual was revised "to more vividly illustrate the correct operation of the telephone." Tr. at II:182. Dr. Gearhart testified that he saw none of these warnings. It was his wife who unpacked and assembled the phone; she said she paid little or no attention to the warnings and read the instruction manual only to learn how to charge the phone's battery.

## II.

The case was given to the jury on a strict-liability/design-defect theory. Uniden asked the District Court also to submit an instruction on comparative fault, based on the decision in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo.1983) (en banc) adopting that doctrine in Missouri tort cases. The District Court refused to apply comparative fault in a strict liability case, stating that it was not "within the province of this Court at this time and with this case to pre-empt what the Missouri Supreme Court might do." Tr. at VI:28. We disagree with the District Court's characterization of its responsibilities. Under the principles of *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), when state law is unclear or unsettled, "it is the duty of a federal court to apply the rule it believes the state supreme court would follow." *Garoogian v. Medlock,* 592 F.2d 997, 1000 (8th Cir.1979). The District Court therefore should have considered the issue before it and decided that the Missouri Supreme Court would apply comparative-fault principles in a strict-liability case.

We arrive at this conclusion, also reached by the District Court in *Friley v. Inter'l Playtex, Inc.,* 604 F.Supp. 126 (W.D.Mo.

---

1. The card, measuring slightly larger than five inches by eight inches, stated in white lettering:
!IMPORTANT!
1. *Warning:* Telephone ringer is located in the handset earpiece. Always move the handset's STANDBY/TALK switch to the TALK position *before* bringing handset to your ear. A loud ring comes through handset earpiece whenever incoming calls are received.

1984),[2] through our reading of *Gustafson*. The issue before the Missouri Supreme Court in *Gustafson* was only the vitality of the doctrines of last clear chance and humanitarian negligence. The holding, however, was far more sweeping. "[T]here must be a better way to attain fairness and justice," the court said, "than to continue to indulge in fictions in the application of a bundle of antiquated and fairly inflexible rules of tort law," 661 S.W.2d at 13, in particular, those rules which result in all-or-nothing verdicts for either plaintiff or defendant. *Id., quoting* H. Woods, *The Negligence Case: Comparative Fault* 14–15 (1978). After reviewing its limited experiments with comparative negligence, the court said it wanted "the simplest and most clear, concise and direct method for adopting a comprehensive system of comparative fault for the trial of tort cases." *Id.* at 15. Therefore, the court held, "[i]nsofar as possible[,] this and future cases shall apply the doctrine of pure comparative fault in accordance with Uniform Comparative Fault Act §§ 1–6." *Id.* The entire Act, including commissioners' comments and notes, was then reproduced as an appendix to the opinion. *Id.* at 17–27.

Some commentators have argued that "insofar as possible" ought to be read as a limitation on the applicability of the Act in light of prior Missouri law, and that the court did not intend to embrace the entire Act as law. Anderson and Bruce, *Recent Developments in Missouri Tort Law:* *Gustafson v. Benda,* 52 UMKC L.Rev. 538, 543–44 (1984); Hollinger and Dill, *Comparative Fault, Strict Liability and Crashworthiness Cases,* 41 J.Mo.Bar 217 (1985); see also *State ex rel. General Electric Co. v. Gaertner,* 666 S.W.2d 764, 770 (Mo.1984) (en banc) (Blackmar, J., concurring in result). However, given the sweeping language of *Gustafson,* as well as its specific call for a "comprehensive system," we believe that the Missouri Supreme Court intended to apply the principles of the Act as broadly as possible to Missouri law,[3] without regard to the intricacies of pre-*Gustafson* case law.

Turning to the issues in this appeal, we find that the Act clearly contemplates the use of comparative negligence in cases of strict liability. Section 1 states that "in an action based on fault * * *, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages."[4] In explaining what conduct by a defendant constitutes "fault," the commissioners noted that "[a]lthough strict liability is sometimes called absolute liability or liability without fault, it is still included." *Id.,* comment (a); see also, *id.,* comment (b).

Some courts have held that it is theoretically inconsistent to compare the fault of a plaintiff with the strict liability of a defendant established under Restatement (2d) of Torts § 402A, accepted by Missouri in *Keener v. Dayton Elec. Mfg. Co.,* 445 S.W.2d 362 (Mo.1969). See *Kinard v.*

---

**2.** In *Friley,* described as a "strict products liability/negligence" case, the District Court held that *"[o]f course,* the jury's award of $6,500.00 in compensatory damages must be reduced by the plaintiff's percentage of fault." 604 F.Supp. at 126 (emphasis added).

**3.** In *State ex rel. General Electric Co. v. Gaertner,* 666 S.W.2d 764 (Mo.1984) (en banc), the court used principles of contribution taken from the Uniform Act, as well as from its limited pre-*Gustafson* experiments with comparative fault. Although critics of a broad reading of *Gustafson* see this as a restriction on the case's applicability, it seems clear that the Act's approval of the course chosen by the court was at least as crucial to the decision as the applicability of the pre-*Gustafson* precedents. *Id.* at 766–67.

**4.** In describing the effect of "contributory fault," the act states in full:

(a) In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery. This rule applies whether or not under prior law the claimant's contributory fault constituted a defense or was disregarded under applicable legal doctrines, such as last clear chance.

Section 1(a), *reproduced in Gustafson,* 661 S.W.2d 11, 18 (Mo.1983) (en banc).

*Coats Co.*, 37 Colo.App. 555, 553 P.2d 835 (1976); *Correia v. Firestone Tire & Mfg. Co.*, 388 Mass. 342, 446 N.E.2d 1033 (1983). The Missouri Supreme Court, however, has quoted with approval the authors of the Uniform Comparative Fault Act, who said:

> Strict liability for both abnormally dangerous activities and for products bears a strong similarity to negligence as a matter of law (negligence per se), and the factfinder should have no real difficulty in setting percentages of fault. Putting out a product that is dangerous to the user or the public or engaging in an activity that is dangerous to those in the vicinity involves a measure of fault that can be weighed and compared, even though it is not characterized as negligence.

Section 1, comment (a), *reproduced in Gustafson*, 661 S.W.2d at 19. See also *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978); *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377 (Minn.1977); Comment, *Comparative Negligence and Strict Products Liability: Where Do We Stand? Where Do We Go?* 29 Vill.L.Rev. 695, 705–12, 714–17 (1983–84).[5]

Plaintiff's counsel conceded at oral argument that the Missouri Supreme Court was likely to apply comparative-fault principles

in strict-liability cases but further argued that there was insufficient evidence in this case that Dr. Gearhart was at fault. However, plaintiff here seems to be treating comparative fault as merely an overlay to the previous Missouri rules for considering plaintiff conduct in strict-liability cases. Under those standards, taken from Restatement (2d) of Torts, § 402A, comment (n), the contributory negligence of a claimant was not considered at all in a strict liability action unless the plaintiff knew of the product's defect and still unreasonably used the product. Such contributory fault then barred plaintiff's recovery completely.[6] *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 365 (Mo.1969); *McGowne v. Challenge-Cook Bros., Inc.*, 672 F.2d 652, 662 (8th Cir.1982). The purpose of this approach was to protect the policy goals of strict liability by not permitting minimal negligence on a plaintiff's part to foreclose damages, while at the same time not holding a defendant completely liable for reckless acts by the consumer of a defective product. By arguing that plaintiff's conduct under *comparative* fault should be limited to that which would rise to the old level of *contributory* fault, plaintiff is asking this Court to engraft onto *Gustafson* and the Uniform Act[7] the very all-or-nothing principles the Missouri Supreme Court

---

**5.** In *Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434 (Mo.1984) (en banc), the Missouri Supreme Court refused to permit the defendant, charged under a design-defect theory in a product-liability case, to present a state-of-the-art defense, saying that "fault is an irrelevant consideration on the issue of liability in the strict liability context." *Id.* at 438. It has been suggested that such language, taken with Justice Donnelly's call in dissent for the application of comparative fault in strict-liability cases, 673 S.W.2d at 444 (Donnelly, J., dissenting), reflects a determination by the Missouri Supreme Court to keep separate the doctrines of comparative fault and strict liability. See Hollinger and Dill, *Comparative Fault, Strict Liability and Crashworthiness Cases*, 41 J.Mo.Bar 217, 220–221 (1985). But *Elmore* deals only with establishment of a defendant's responsibility for a product defect; it is in no way concerned with the actions of a plaintiff that might be used to reduce an already "liable" defendant's damages. Moreover, we believe that the court's references in *Elmore* to

"fault" should be read alongside the comments by the commissioners of the Uniform Comparative Fault Act about the nature of fault in the strict-liability context. See *supra* p. 151.

**6.** If comparative-fault principles were not extended to strict-liability actions, then plaintiffs who were contributorily at fault would still be completely barred from recovery. The anomalous result of this would be that Missouri had banished from its tort law all absolute bars to recovery except in cases under strict liability, a doctrine ostensibly designed to protect consumers.

**7.** This would be in direct contradiction to the provision of the Uniform Act which states that the rule of reduced damages "applies whether or not under prior law the claimant's contributory fault constituted a defense or was disregarded...." Section 1(a), *reproduced at* 661 S.W.2d at 18.

hoped to eliminate by adopting comparative fault.[8]

■ We hold instead that under Missouri law,[9] plaintiff's conduct in strict-liability cases is to be measured by the definition of fault provided in the Uniform Comparative Fault act, which states:

> "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

Section 1(b), *reproduced at* 661 S.W.2d at 18. By these standards, it is clearly for the jury to decide whether Dr. Gearhart reasonably acted to answer a ringing telephone or unreasonably failed to acquaint

himself with a piece of new technology, and, if he behaved unreasonably, to what extent that conduct caused his injuries. Accordingly, we vacate and remand for a new trial.

## III.

Since we cannot say what evidence will be presented when the case is retried, it is unnecessary for this Court to consider the defendant's claim that the evidence was insufficient on the question of punitive damages. However, to expedite that retrial, we have considered two specific questions raised by defendant on the issue of punitive damages.

■ The District Court properly permitted plaintiff to introduce complaints by consumers who claimed to be injured by defendant's cordless telephone "not because of truthfulness of the material in the documents, but * * * for the issue of notice information to the defendant only." Tr. at II:222. Also properly, the court ordered that references to defendant's insur-

---

8. After argument, plaintiff's counsel submitted to the Court two recent cases which were said to support plaintiff's position. Plaintiff first argues that *Collier v. Bi-State Development Agency*, 700 S.W.2d 479. (Mo.App.1985), holds that the issue of plaintiff's fault cannot go to the jury without substantial evidentiary support that the plaintiff voluntarily encountered a known danger. However, we find *Collier* inapt on several grounds: the case appears to deal with contributory negligence rather than comparative fault; the defendant was a common carrier; there is no indication whether this case was tried on pre- or post-*Gustafson* standards; and the "fault" of which the adolescent plaintiff-passenger was accused was failure to grab the handrail in front of him as defendant's bus crashed. Under these facts, plaintiff's conduct in *Collier* does not appear to meet the causation standard set out in the Uniform Act. See *infra* p. 152. In any event, we must follow what seems to be the plain import of *Gustafson*.

The second recent opinion cited by plaintiff is the decision by the Illinois Supreme Court to exclude from consideration in strict-liability cases conduct by a plaintiff which amounts only to "lack of due care for one's own safety as measured by the reasonable-man standard." *Simpson v. General Motors Corp.*, 108 Ill.2d 146, 90 Ill.Dec. 854, 855–56, 483 N.E.2d 1, 2–3 (1985). The court had previously extended the princi-

ples of comparative fault to strict liability, although not including a plaintiff's "unobservant, inattentive, ignorant, or awkward failure to discover or guard against a defect." *Coney v. J.L.G. Indus., Inc.*, 97 Ill.2d 104, 73 Ill.Dec. 337, 344, 454 N.E.2d 197, 204 (1983). See also *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 90 (Fla. 1976). First, it is important to note that when the Illinois Supreme Court adopted pure comparative fault, it specifically declined to endorse the model proposed in the Uniform Comparative Fault Act, *Alvis v. Ribar*, 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886 (1981). Moreover, as explained above, we agree with the reasoning of the *Simpson* dissent, which argues that limiting consideration of plaintiff's conduct in strict-liability cases to instances of assumption of risk and misuse (similar to Missouri's old contributory-fault standard) can lead to an "application of pure comparative-fault principles [which] will become just as uncertain, just as unfair and in some instances just as harsh," *Simpson*, 90 Ill.Dec. at 860, 483 N.E.2d at 7 (Ryan, J., dissenting), as the old doctrines comparative fault was designed to replace.

9. The District Court and we are bound to follow the lead of the Missouri Supreme Court in interpreting that state's law. Should it later hold differently from our decision in this case, the District Court should, of course, adhere to the principles adopted by the state Supreme Court.

ance coverage be redacted from the documents. However, defendant complains, and we agree, that other potentially prejudicial information was given to the jury in these materials. We hold, therefore, that should these documents be introduced on retrial, deletions should be made of any references to legal conclusions about alleged defects in the cordless phone, demands for or estimated amounts of damages, and settlement agreements or negotiations for settlement. This would include copies of pleadings filed in other cases.

■ Uniden also claims that plaintiff's references in closing argument to defendant's foreign parent corporations were improper. We agree. Under Missouri law, the wealth of a defendant's corporate parent is usually irrelevant to the question of punitive damages. See *Liberty Fin. Management Corp. v. Beneficial Data Processing Corp.*, 670 S.W.2d 40 (Mo.App. 1984). Moreover, we believe such repeated references to Far Eastern parent corporations and "foreign goods" or "foreign products," Tr. VI:37,51,54, could prejudicially appeal to xenophobia and the current United States-Japanese trade imbalance. Such remarks should not be permitted on retrial.

Reversed and remanded.