James BASS, Plaintiff-Respondent,

v.

BI–STATE DEVELOPMENT AGENCY, Defendant-Appellant.

No. 45923.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 11, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 13, 1983.

Application to Transfer Denied
Jan. 17, 1984.

William P. Russell and Ira M. Young, St. Louis, for defendant-appellant.

Stephen F. Meyerkord, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

James Bass, respondent, brought this action against Bi-State Development Agency, appellant, alleging negligence in an incident in which he was injured when a metal bolt was thrown through the window of a bus. A jury awarded respondent $82,000. Appellant maintains the trial court erred in denying its motion for a directed verdict. We reverse.

Appellant Bi-State Development Agency, a body corporate and politic organized under Chapter 70.370 RSMo, operates a public bus transportation system in the metropolitan St. Louis area.

On October 31, 1979, respondent James Bass, then 28 years old, was a passenger on one of appellant's buses. The bus was being operated on the Page-Wellston Line and was proceeding west on Washington Avenue. The bus stopped first at a bus stop on the northeast corner of the intersection with Jefferson, and then pulled up a few feet and stopped at the red light at the corner. When the bus stopped at the bus stop, respondent saw three or four boys on the north side of Washington and west of Jefferson. The boys attracted respondent's attention because it looked like they were holding something in their hands.

At trial, respondent testified he had seen other children throwing objects at the bus on the same route on three different occa-

sions. The bus driver testified children had thrown objects at his bus in the past, but he had never had such occurrences on this particular route.

Respondent testified that when he saw the boys, he was afraid they would throw something at the bus. Respondent testified he tried to close his window, but was unable to do so, and instead moved over in his seat.

Just as the front end of the bus crossed Jefferson, the boys threw the first object at the bus. As the bus got almost to the middle of the block, the boys caught up with it. They ran alongside the bus for fifteen to twenty feet throwing more objects. One of the objects, a metal bolt, came through the window and hit respondent in the center of his left eye. Respondent testified that about twenty to twenty-five seconds passed from the time the first object struck the bus until he was hit.

The bus driver related that he did not see the group of boys standing on the west side of Jefferson and the north side of Washington as he approached Jefferson. The driver testified he was not aware the objects were being thrown at the bus until afterwards when someone on the bus called out to him to "stop the bus." None of the passengers on the bus had notified the driver of what was happening.

Washington Avenue, at its intersection with Jefferson Avenue, is six lanes wide; three eastbound and three westbound. Washington Avenue jogs or bends to the left about 100 feet west of the intersection and the street narrows from three to two lanes. As the bus crossed Jefferson Avenue, it had to angle to the left and merge with traffic in the two moving lanes. At that time, the driver's attention was focused on his left rearview mirror for other westbound traffic approaching from the rear.

By the time the bus driver learned of the incident, the bus had traveled several blocks west of where the injury to the respondent had occurred. The driver stopped the bus and called his "trouble dispatcher." He then walked to the rear of the bus to find out what had happened. A bus company supervisor came to the scene. A police officer also made an investigation. All of the other bus passengers had departed before the officer and supervisor arrived.

Respondent was taken by ambulance to Barnes Hospital, where an examination revealed a lid laceration and inflammation of the left eye. He remained under observation at the hospital until November 5, and returned November 7 as an out-patient for an eye operation. Respondent incurred medical expenses of $1,321.46 and lost wages of about $1,500.

The jury retired to deliberate at 11:50 a.m. and resumed deliberations after a one and one-half hour lunch break. At 3:48 p.m., the jury advised the court it was split 8–4 after five ballots, and was unable to reach a decision. After denying appellant's motion for a mistrial, the court instructed the jury to deliberate further. At 4:45 p.m., the jury returned a 10–2 verdict in favor of respondent for $82,000.

This appeal follows. Appellant's first point contends the trial court erred in denying its motion for a directed verdict because 1) the evidence was insufficient and failed to show the appellant knew of or reasonably could have anticipated the unlawful conduct of the boys throwing objects at the bus; 2) there was insufficient evidence to submit to the jury the issue of whether appellant's bus operator knew or reasonably should have known that objects were being thrown at the bus in time to have taken action to avoid the thrown object that struck respondent, and 3) the evidence was insufficient as a matter of law to establish that the alleged negligence of appellant's bus operator was the proximate cause of plaintiff's injury.

In considering appellant's first point, we must view the evidence in the light most favorable to the respondent. *Dulley v. Berkley,* 304 S.W.2d 878, 880 (Mo.1957).

We also are governed by the general rule that a verdict awarding damages for negligence must be supported by evidence that shows 1) the existence of a duty on the part of the defendant to protect the plain-

tiff from injury; 2) the failure of the defendant to perform that duty, and 3) injury to the plaintiff resulting from such failure. *Stevens v. Wetterau Foods, Inc.,* 501 S.W.2d 494, 498 (Mo.App.1973).

■ The law imposes a strict duty of care as to common carriers, such as Bi-State. *Jackson v. Bi-State Transit System,* 550 S.W.2d 228 (Mo.App.1977). A common carrier is under a duty to exercise the highest degree of care to protect its passengers from all dangers that are known or by the exercise of the highest degree of care ought to be known. These dangers include the actions of third parties over whom the carrier has no control when injury reasonably could have been anticipated by the carrier or its employees. *Id.* at 232.

■ These strict principles of care and the imposition of liability are tempered by the fact a common carrier is not an insurer of the safety of its passengers. Although the carrier is bound to exercise the utmost care to safely transport its passengers and to protect them while in transit, that duty does not amount to an absolute guarantee a passenger will be transported to his destination with absolute safety. *Id.* A carrier is not responsible for the acts of third parties that are not reasonably anticipated. That is too high a duty. *Id.*

As the court in *Jackson* stated, "We have not as yet reached the point when a carrier is responsible for each and every injury that occurs on one of its vehicles regardless of cause. We do not as yet have 'a no-fault' common carrier law." *Id.*

■ In view of these guiding principles, we find there was insufficient evidence to show the appellant Bi-State breached its duty of care to the respondent.

Respondent maintains the bus driver should have anticipated the unlawful conduct of the boys throwing objects at the bus. Respondent further maintains that once the boys did begin throwing the objects, the driver either knew or should have known the bus was being hit and was negligent in failing to speed up the bus.

Nothing in the respondent's testimony indicated the driver anticipated or should have anticipated the boys would throw objects at the bus. In addition, there is nothing to indicate he knew or should have known the bus was under assault while it was being hit. Neither respondent nor the other passengers warned the bus driver of the actions of the boys prior to respondent's injury. The bus driver testified he did not see the boys and was not aware anything unusual had taken place until someone on the bus yelled out *after* the respondent was injured. At the time of the incident the bus driver's attention was focused on merging the bus into traffic where the street narrowed from three to two lanes. Thus, the driver's head would have been turned away from the direction of the boys throwing the objects. The bus driver neither saw nor heard anything that would indicate the bus or its passengers were imperiled.

In addition, there is no evidence to support the contention that the driver had time to accelerate the bus to a speed that would have avoided the injury to the respondent. The heavy rush hour traffic and the merging of the lanes support a stronger inference it would have been unsafe and imprudent for the bus driver to have increased his speed.

Respondent's submission, therefore, on the theory of appellant's knowledge or reasonable anticipation of impending danger to the passengers on the bus is not supported by the evidence.

The question of whether the evidence in a case is substantial is one of law for the court. *Probst v. Seyer,* 353 S.W.2d 798 (Mo.1962) and *Vietmeier v. Voss,* 246 S.W.2d 785 (Mo.1952).

■ If the evidence presents a situation from which liability or nonliability may be equally inferred, the court must declare that no case has been made. *Vietmeier, supra* at 787. This involves the question of whether the evidence is in truth substantial, which is one of law, as distinguished from mere conflict in the evidence, which is one of fact for the jury. *Id.*

Giving deference to the principle that the court must view the evidence in the light most favorable to the plaintiff and give him the benefit of all inferences that reasonably may be drawn from the evidence, it cannot be said respondent's evidence here rises to the requisite level of submissibility. The court will not make a plaintiff's case for him by supplying missing evidence. *Merriman v. Johnson,* 496 S.W.2d 326, 330 (Mo. App.1973).

Even assuming *arguendo* the appellant breached its duty of care by failing to realize the danger to the respondent, there is no evidence that the failure to speed up the bus was the proximate cause of the respondent's injuries.

■ A causal connection must be established between the negligence charged or submitted and the loss or injury sustained. It must be shown the injury would not have happened but for the negligence, and that the negligence was not only a cause, but was a proximate cause. *Branstetter v. Gerdeman,* 364 Mo. 1230, 274 S.W.2d 240, 245 (1955).

In the present case, the jury would be required to speculate to make a determination that appellant's alleged negligence as submitted—the failure to increase the speed of the bus—was a proximate cause of respondent's injury. It cannot be said the jury reasonably could infer respondent's injury would not have occurred absent appellant's alleged negligence. The evidence does not support the inference that if the speed of the bus had been increased, the metal bolt thrown by one of the boys would not have struck respondent. There is no evidence as to how much the bus would have had to increase its speed to avoid the injury. There is no evidence as to the distance over which the speed should have been increased. And, there is no evidence an increase in speed would have been safe under the existing traffic conditions.

The respondent failed in his burden to establish the *prima facie* elements of negligence necessary to a submissible case. There is insufficient evidence to show the appellant breached its duty of care owed to the respondent by failing to increase the speed of the bus, or that such a failure was the proximate cause of the respondent's injuries. For this reason, we are of the opinion the trial court erred in denying appellant's motion for a directed verdict at the close of the evidence.

We need not address appellant's other claims of error as appellant's initial claim of error is dispositive of this appeal and therefore we reverse.

SMITH and KELLY, JJ., concur.