**Lisa SANFORD and Ethel Sanford, Plaintiffs-Respondents,**

v.

**BI-STATE DEVELOPMENT AGENCY, Defendant-Appellant.**

**No. 49571.**

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 14, 1986.

Motion for Rehearing and/or Transfer Denied Feb. 11, 1986.

Application to Transfer Denied, March 25, 1986.

 

Russell F. Watters, Charles E. Reis, IV, St. Louis, for defendant-appellant.

Samuel Goldblatt, St. Louis, for plaintiffs-respondents.

PUDLOWSKI, Judge.

Appellant Bi-State Development Agency appeals from a judgment entered in favor of respondents Lisa and Ethel Sanford. Lisa Sanford brought her action for personal injuries she sustained when struck by a van while crossing the street after disembarking from appellant's bus. Her mother, Ethel Sanford, also brought an action for medical bills and loss of Lisa Sanford's services. We reverse and remand.

On the afternoon of December 8, 1979, Lisa Sanford and her sister Michelle boarded appellant's southbound Kingshighway bus at Thekla in north St. Louis. Lisa Sanford was then four days away from her fourteenth birthday. Michelle Sanford was twelve. As the bus passed Cote Brilliante between 1:30 p.m. and 2:00 p.m., the two girls stood up and walked to the front of the bus in order to get off at Aldine, the street where they lived.

At their stop, the bus driver, Wendell Hodge, pulled the bus even to the bus stop sign about one foot into the curb lane. A car parked in the bus zone or right behind the bus zone in a no parking area complicated the bus driver's approach. Although nothing would have prevented him from stopping parallel to the curb further south except the fact that he would have blocked the driveway to the Wohl Community Center parking lot, the bus driver chose to stop where he did at such an angle so as not to hit the parked car with the bus' back end. Photographs introduced into evidence clearly established that anyone alighting from the bus could safely traverse the seven feet to the sidewalk because no car could drive between the curb and the right side of the bus.

At the stop, Michelle Sanford disembarked from the bus first. Lisa Sanford followed a few steps behind her. Michelle

Sanford then walked along the front of the bus, stopped on the driver's side, looked for traffic, and crossed the southbound lanes. Lisa Sanford also walked along the front of the bus. When she approached the bus' center, the bus driver saw her cross and then checked his mirror. When he looked, he saw a van even with the rear of the bus passing to the left at about thirty to thirty-five miles per hour. At trial, the bus driver testified that as soon as he saw the van he sounded his horn. This was immediately before the van hit Lisa Sanford.

At trial, Lisa Sanford testified that she never heard the horn. When she reached the left side of the bus, she looked to her left and saw no southbound traffic as far north as Cote Brilliante. She then took a step and was struck by the van.

In his deposition which was read to the jury by respondents' counsel, the van driver, Kevin Robinson, testified that he started to pass when he was about two hundred feet behind the bus. He stated that he saw the bus' brake lights on and knew the bus was stopping. He also testified that as he passed the bus he was driving thirty to thirty-two miles per hour. While passing, Mr. Robinson heard a thud and then pulled his van into the median. Before he pulled over and stopped, he never saw Lisa Sanford.

At trial, after the close of respondents' evidence, appellant chose not to present any evidence and moved for a directed verdict which was denied. Respondents' case was then submitted to the jury on the following theories: (1) the bus driver failed to warn the van driver that passengers were disembarking; (2) the bus driver opened the bus' door and permitted Lisa Sanford to exit when he knew or could have known that the van was attempting to pass the bus; and (3) the bus driver failed to warn Lisa Sanford that the van was passing the bus when he knew or could have known of the van's presence. Appellant submitted its own verdict director on the theory that Lisa Sanford was discharged in a zone of safety which she left and was then injured.

Following its deliberations, the jury returned a verdict in favor of Lisa Sanford in the amount of $64,000.00. The jury also returned a verdict in favor of Ethel Sanford in the amount of $15,000.00. These awards were reduced by one-half because the jury found Lisa Sanford fifty percent negligent. Thereafter, appellant moved for a judgment notwithstanding the verdict or for a new trial. These motions were overruled and this appeal followed.

In its first point on appeal, appellant challenges the trial court's ruling denying its motions for a directed verdict, a judgment notwithstanding the verdict, and a new trial. Appellant predicates this point on the ground that respondents failed to make a submissible case because they failed to establish with substantial evidence that Lisa Sanford's injuries were proximately caused by appellant's alleged failure to perform a duty owed to Lisa Sanford.

In determining whether or not a submissible case was made, we view the evidence in the light most favorable to respondents. *Rauschelbach v. Benincasa*, 372 S.W.2d 120, 124 (Mo.1963). We also give respondents the benefit of all favorable inferences arising from all the evidence, and disregard appellant's evidence where it conflicts with respondents' evidence or fails to strengthen respondents' case. *Feldotto v. St. Louis Public Service Company*, 285 S.W.2d 30, 31 (Mo.App. 1955). Our review is further governed by the rule that a verdict awarding damages for negligence must be supported by evidence that shows (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) the failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from that failure. *Bass v. Bi-State Development Agency*, 661 S.W.2d 609, 611–612 (Mo.App. 1983).

We also acknowledge the strict duty of care the law imposes on common carriers. *Bass*, 661 S.W.2d at 612. The law requires a common carrier to exercise the

highest degree of care to protect its passengers from all known and reasonably foreseeable dangers. *Id.* This duty continues at least until the passenger has been discharged from the carrier at a reasonably safe place. *Lanham v. St. Louis Public Service Company*, 360 S.W.2d 243, 246 (Mo.App.1962).

As a general rule, however, once a passenger alights at a safe location, the carrier is no longer liable for the injuries sustained by the former passenger in crossing the street. 5 Blashfield, *Automobile Law and Practice* § 234.8 at 612 (3d ed. 1966). Likewise, where a bus stops in an unlawful position, but discharges the passenger in a safe place, and the passenger of his own volition walks to a place of danger where he is struck and injured, the injury is the remote and not the proximate consequence of the negligent or unlawful position in which the bus was stopped. 5 Blashfield, *supra* § 234.3 at 605–606.

Missouri cases analyzing the question whether the passenger-carrier relationship and its incidental duties continue after the passenger has safely left the bus and is on the ground reach similar results. In *Smuzynski v. East St. Louis Railway Company*, 230 Mo.App. 1095, 93 S.W.2d 1058 (1936), a passenger was struck and injured by an automobile while crossing the road in front of the streetcar from which she had safely alighted. In reversing the judgment entered in favor of the woman, the court of appeals held where one alights safely from a streetcar, the passenger-carrier relationship ceases and the carrier is no longer liable for the former passenger's safe passage from the streetcar to the sidewalk. *Id.* at 1064. The court of appeals also held that the motorman's alleged failure to warn the woman of vehicular traffic was not the proximate cause of her injuries because she knew of the existence of such traffic and its dangers as well as he. *Id.* at 1068. Therefore, her negligence or her negligence combined with the possible negligence of the automobile driver constituted the proximate cause of her injury. *Id.*

Likewise, in *Lieser v. Bi-State Development Agency*, 509 S.W.2d 53 (Mo. banc 1974), the Missouri Supreme Court held that the carrier was not liable for injuries sustained by a former passenger in the course of traveling from her point of debarkation to her ultimate destination because once the passenger alighted in safety, the passenger-carrier relationship terminated. *See also Brooks v. Manhattan and Bronx Surface Transit Operating Authority*, 94 A.D.2d 656, 462 N.Y.S.2d 217 (A.D. 1 Dept. 1983) (Where bus passenger was discharged at a reasonably safe place within a step of the curb, the bus company was not liable for the passenger's injuries when he was struck by a car while crossing the street in front of the bus just moments after alighting.); *Sheir v. Metropolitan Dade County*, 375 So.2d 1114 (Fla.App. 1979) (Where a former passenger of a northbound bus was struck by another northbound vehicle while crossing the street in front of the bus, the bus driver was not negligent in failing to warn the passenger of the vehicle's approach because no duty existed once the passenger safely alighted.).

After reviewing these authorities, we conclude as a matter of law that appellant was not liable for Lisa Sanford's injuries. The evidence clearly established that appellant's bus driver discharged Lisa Sanford in a safe place. Once she safely alighted from the bus and was upon the street, appellant as a common carrier was no longer responsible for Lisa Sanford's safety, *Lanham*, 360 S.W.2d at 246, nor under an obligation to insure that she would safely reach her ultimate destination, *Lieser*, 509 S.W.2d at 59. Although appellant's driver failed to pull the bus to the curb, his actions were not the proximate cause of Lisa Sanford's injuries. Her injuries were the proximate consequence of her independent, intervening act of crossing the street after leaving the bus. The relative positions of the parked car and the bus precluded any traffic from passing the bus to the right and endangering Lisa Sanford's safety while alighting. Once she

alighted upon the street, she easily and safely could have walked to the sidewalk unimpeded. Instead, she chose to leave her place of safety by walking in front of the bus into the stream of traffic.

On appeal, respondents suggest we are bound by our Supreme Court's decision in *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291 (Mo. banc 1978). Their reliance on *Graeff*, however, is misplaced. Indeed, the Missouri Supreme Court stated that the situation in *Graeff* was distinguishable from those presented in *Lieser* or *Smuzynski*. *Id.* at 307. Unlike these cases and the present one, the plaintiff in *Graeff*, an eight year old, mildly retarded boy, never had a reasonably safe place to alight.

In *Graeff*, the church bus the boy was riding stopped over the center line of the street about five to nine feet from the curb. With the bus stopped in this position, traffic could pass either to the left or the right. Although the bus was equipped with a stop arm, the driver carelessly failed to use it despite his knowledge that the mentally handicapped child would have to cross the street to get to his home. The driver with knowledge of the approach of a passing motorist then negligently permitted the plaintiff to exit and to cross the street in front of the bus. Thereafter, the plaintiff was hit by the passing motorist whose approach had been seen by the bus driver before the child's debarkation.

Under these circumstances and unlike those in the present case, the bus driver's duty to the plaintiff in *Graeff* did not terminate once he exited the bus because the dangerous conditions surrounding his discharge arose before he alighted and not after he reached the street. *Id.* at 308. Therefore, due to the unsafe nature of the plaintiff's place of discharge, the driver's negligence was the proximate cause of the plaintiff's injury. *Id.* at 307.

Unlike the plaintiff in *Graeff*, respondents failed to establish that Lisa Sanford's injuries were proximately caused by appellant's failure to perform a duty owed to her. Unlike the plaintiff in *Graeff*, Lisa

Sanford was discharged in a place of safety. Once she was safely on the street with a protected path to the sidewalk, appellant was no longer under a duty to Lisa Sanford within the passenger-carrier relationship nor under an obligation to insure her a safe passage to her ultimate destination. *Lieser*, 509 S.W.2d at 59. Therefore, Lisa Sanford's independent, intervening act of crossing the street, and not any act of appellant's driver, constituted the proximate cause of her injuries.

Because we hold as a matter of law that appellant was not liable for Lisa Sanford's injuries, we do not address appellant's remaining points on appeal. The judgment of the trial court is reversed and remanded with directions to enter judgment in favor of the appellant.

CRANDALL, P.J., and KELLY, J., concur.