**Joshua TRADER, et al., Appellants,**

v.

**Scott BLANZ, et al., Respondents.**

**No. WD 51869.**

Missouri Court of Appeals,
Western District.

Dec. 3, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 28, 1997.

Steven C. Effertz, Independence, for appellants.

William T. Bernard, Kansas City, for respondents.

Before ELLIS, P.J., SPINDEN and LAURA DENVIR STITH, JJ.

ELLIS, Presiding Judge.

Joshua Trader and Lynsay Trader, by and through their next friend, Phyllis Winters, appeal from a defendant's verdict entered in Jackson County Circuit Court in their wrongful death action against Metropolitan Transportation Services, Inc. d/b/a Yellow Cab ("MTSI").

Mark Trader ("Trader") was the father of Joshua and Lynsay Trader. On April 29, 1992, MTSI driver, Scott Blanz, picked up Trader at a neighborhood bar and grill. Trader smelled of alcohol and appeared inebriated, but was able to maneuver by himself. Another gentleman, Mr. James Mansfield, accompanied Trader to the cab and directed Blanz to drive Trader to his apartment at 40th and Crysler. Although Trader appeared inebriated, he was coherent and gave Blanz directions to his apartment throughout the trip.

Once the cab arrived at the apartment complex, Trader paid the fare and exited the cab. Blanz watched him walk half-way up the sidewalk and then began to count his money. When Blanz heard voices, he looked up and saw Trader standing on his porch smoking a cigarette, apparently arguing with Mansfield. Blanz considered Mansfield's presence at the apartment odd because Mansfield had been with Trader at the bar when Blanz first picked him up, but Mans-

field had not ridden in the cab with them to the apartment complex.

Blanz continued to count his money, looking up at Trader and Mansfield every so often. After several minutes, Blanz turned the cab around to exit the apartment complex. As Blanz was leaving, he called the dispatcher, an old friend with whom he often discussed the odd situations he observed while he was driving the cab. Blanz told him about the incident. The dispatcher told Blanz that, if there was no physical contact, he should just leave. Blanz also asked his fiance, who was riding with him in the cab, if she thought that they should stay. She said "No." Sometime after Blanz left, Trader was stabbed to death. Mansfield was subsequently charged with and convicted for the murder.

The Plaintiffs brought this wrongful death action claiming Blanz was negligent for failing to anticipate the criminal actions against Trader and failing to take any action to prevent his death. Plaintiffs' Petition alleged that Blanz "owed a duty to exercise a high degree of care to protect decedent from injury and death and to take reasonable precautions to insure his safety," because he "knew or in the exercise of a high degree of care should have known, an assault upon decedent, Mark Trader, was likely." The case was tried to a jury. At the conclusion of the Plaintiffs' case, MTSI moved for a directed verdict. The trial court denied MTSI's motion. The case was submitted and after deliberations, the jury returned a verdict in favor of MTSI. The Plaintiffs filed a Motion for New Trial, which the court denied, and they then perfected this appeal.

The Plaintiffs argue three points on appeal: the first claiming error in admission of certain evidence, the second asserting the trial court erred by not declaring, as a matter of law, that Blanz was an agent of MTSI, and finally, that a converse instruction was erroneously given. We need not address any of these contentions directly because we conclude the Plaintiffs failed to make a submissible case.

■ Taxicabs are common carriers. *Harding v. Triplett*, 235 S.W.2d 112, 113 (Mo.App. E.D.1950). Missouri case law holds that "a common carrier has a duty to exercise the highest degree of care to safely transport its passengers and to protect them *while in transit.*" *Collier v. Bi–State Dev. Agency*, 700 S.W.2d 479, 480 (Mo.App. E.D. 1985) (emphasis added). In other words, the law imposes upon the carrier the duty to exercise the highest degree of care while the passenger-carrier relationship exists. *Meyer v. St. Louis Pub. Serv. Co.*, 241 Mo.App. 1057, 253 S.W.2d 525, 529 (1952). This duty includes the protection of passengers from all known and reasonably foreseeable dangers, "at least until the passenger has been discharged from the carrier at a reasonably safe place." *Sanford v. Bi–State Dev. Agency*, 705 S.W.2d 572, 575 (Mo.App. E.D.1986); *Plummer v. Dace*, 818 S.W.2d 317, 320 (Mo. App. E.D.1991). This duty, however, does not rise to the level of strict liability or to that of an insurer. *Collier v. Bi–State Dev. Agency*, 700 S.W.2d at 480.

■ Once the passenger has safely alighted from the carrier and is upon the street or sidewalk, he is no longer a passenger and the carrier is no longer responsible as such. *Meyer v. St. Louis Pub. Serv. Co.*, 253 S.W.2d at 529. Missouri has long held that the common carrier is not liable for injuries sustained by a former passenger in the course of traveling from the point of debarkation to the ultimate destination because once the passenger safely alights from the carrier and is upon the street, the passenger-carrier relationship is terminated. *Sanford v. Bi–State Dev. Agency*, 705 S.W.2d at 575; *Lieser v. Bi–State Dev. Agency*, 509 S.W.2d 53 (Mo. banc 1974); *Lanham v. St. Louis Pub. Serv. Co.*, 360 S.W.2d 243, 246 (Mo.App. E.D.1962). Thus, upon Trader's safe debarkation from the cab, the passenger-carrier relationship terminated and Blanz no longer owed him a duty of protection from all known and reasonably foreseeable dangers. *See Sanford v. Bi–State Dev. Agency*, 705 S.W.2d at 575; *Plummer v. Dace*, 818 S.W.2d at 320.

Recognizing this long established case law, the Plaintiffs pleaded and tried their case on the theory that a new duty to protect Trader arose when Blanz stayed to watch him walk

up the sidewalk. This theory of liability is based on RESTATEMENT (SECOND) OF TORTS, § 323 (1965), which provides in ·pertinent part:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if
>
> (a) his failure to exercise such increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

This section was adopted in Missouri in *Stanturf v. Sipes*, 447 S.W.2d 558 (Mo. banc 1969). *See also Strickland v. Taco Bell Corp.*, 849 S.W.2d 127 (Mo.App. E.D.1993); *Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681 (Mo. banc 1992).

In evaluating whether the Plaintiffs made a submissible case, we review the evidence in the light most favorable to the Plaintiffs and give them the benefit of every reasonable inference which the evidence tends to support, while disregarding all contrary evidence. *Blake v. Irwin*, 913 S.W.2d 923, 928 (Mo.App. W.D.1996). "We liberally view the legitimacy of inferences in the Plaintiffs' favor," however, such "liberal view does not include speculative leaps to the desired inference." *Heacox v. Robbins Educ. Tours, Inc.*, 829 S.W.2d 600, 603 (Mo.App. E.D. 1992). "Liability cannot rest upon guesswork, conjecture, or speculation beyond inferences that can reasonably decide the case." *Garrett v. Overland Garage & Parts, Inc.*, 882 S.W.2d 188, 191 (Mo.App. E.D. 1994). The Plaintiffs must support each and every fact essential to liability with substantial evidence. *Id.* The court cannot submit a case to the jury where no evidence exists to support a finding that the defendant's conduct fell below the identified standard of care. *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993).

As with any other negligence theory, to make a submissible case, the Plaintiffs were required to establish the existence of a duty, a breach of that duty, and causation. *Winkler v. Robinett*, 913 S.W.2d 817, 821 (Mo.App. W.D.1995).[1] It was first incumbent on the Plaintiffs to establish the existence of a duty, i.e., that Blanz gratuitously undertook a duty to, as alleged in their petition, "protect [Trader] from injury and death and to take reasonable precautions to insure his safety." The evidence supporting this proposition, when viewed as set out above, reveals that Trader was intoxicated and smelled of alcohol when he entered the cab. When Trader was dropped off at his apartment complex, he was still intoxicated and stumbling. Blanz watched Trader walk a weavy line toward the porch of the complex, until he was about half way up the sidewalk. Blanz did not leave immediately, but watched Trader standing on the porch smoking a cigarette, talking to Mansfield. Blanz thought it was strange that Mansfield would be at the apartment because he had not needed a ride from the bar. It was apparent to Blanz that they were arguing, and he thought a fight might break out. Blanz continued to sit in his cab, occasionally looking up at Trader and Mansfield to see if the argument was going to escalate. After five to seven minutes, he turned his car around to leave, all the while looking up at the porch. Blanz called the Yellow Cab dispatcher to tell him about Mansfield's appearance at the apartment complex, and asked the dispatcher if he should stay. Blanz also asked his fiance if she thought they should wait until Trader got inside.

While we harbor grave doubts as to whether this evidence is sufficient to establish that Blanz gratuitously undertook to render protective services to Trader, for purposes of this analysis, we will assume that it does. Even so, to impose liability on Blanz

---

1. In denying MTSI's Motion for a Directed Verdict, the court stated:

   I'll tell you what I'm going to do. I think you're probably right, I don't think the appellate court will stretch Section 323 restatement as far as the plaintiff suggests. We've invested three days, I suspect if a verdict is entered I'll probably take care of this in post-trial motions, but I'm going to overrule your motion although I think your law is probably good.

(and ultimately MTSI), it was necessary for the Plaintiffs to show that Blanz's failure to exercise reasonable care in performing his undertaking *increased the risk* that Trader would be physically harmed. This they failed to do.

■ For purposes of imposing liability under § 323 of the RESTATEMENT (SECOND) OF TORTS, it is not enough to show that physical harm resulted from the defendant's failure to exercise reasonable care to perform an undertaking to render services to Trader. Rather, liability can only be assessed if (a) the failure to exercise reasonable care increases the risk of the harm, or (b) the harm is suffered because of the Plaintiffs' reliance upon the defendant's undertaking. Moreover, one who undertakes to render services as envisioned by § 323 may generally terminate such services at any time without liability.

> The fact that the actor gratuitously starts in to aid another does not necessarily require him to continue his services. He is not required to continue them indefinitely, or even until he has done everything in his power to aid and protect the other. The actor may normally abandon his efforts at anytime unless, by giving aid, he has put the other in a worse position than he was in before the actor attempted to aid him. His motives in discontinuing the services are immaterial. It is not necessary for him to justify his failure to continue the services by proving a privilege to do so, based upon his private concerns which would suffer from the continuation of the service. He may without liability discontinue the services through mere caprice, or because of personal dislike or enmity toward the other.

> Where, however, the actor's assistance has put the other in a worse position than he was in before, either because that actual danger of harm to the other has been increased by the partial performance, or because the other, in reliance upon the undertaking, has been induced to forego other opportunities of obtaining assistance, the actor is not free to discontinue his services where a reasonable man would not do so. He will then be required to exercise reasonable care to terminate his services in such a manner that there is no unreasonable risk of harm to the other, or to continue them until they can be so terminated.

RESTATEMENT (SECOND) OF TORTS, § 323, cmt. c (1965).

In the case at bar, the Plaintiffs do not assert that Trader relied on Blanz's undertaking to provide protective services, nor is their any evidence which would support such a proposition. Therefore, in order to make a submissible case, it was essential that there be evidence that the risk of harm to Trader was increased by Blanz's failure to exercise reasonable care to perform his undertaking. There was no such evidence. At best, the record before us reveals that the risk of harm to Trader remained constant between the time Trader exited the cab and Blanz left the area.

There is no evidence that Blanz's inaction enhanced the possibility that Trader would be assaulted by Mansfield. Rather, if anything, the record suggests that Mansfield was intent on harming Trader from the beginning. When Trader initially got into the cab at the bar, Mansfield was present. Mansfield stuck his head in the door and was visible to Blanz under the domelight. Mansfield adamantly directed Blanz to drive Trader to his apartment, repeating the address a number of times and demanding that Blanz write it down.

Mansfield arrived at the apartment shortly after Trader and met him on the porch. Because the porch was well lit and a street light hung nearby, Blanz could see Mansfield and recognized him as the man from the bar. Mansfield looked back at Blanz in the cab and did nothing to try to disguise or conceal his presence. Blanz noted that Mansfield's body language was animated and that he was waving his arms like he was arguing with Trader.

There is simply nothing in the record before us either directly or inferentially establishing an increased risk of harm to Trader. The actual danger of harm to Trader was not increased by Blanz remaining parked at the location for several minutes. And certainly,

Trader was not induced to forego other opportunities of obtaining assistance. Thus, Blanz was free to terminate his undertaking by departing the scene. Consequently, as a matter of law, liability under § 323 could not be imposed on Blanz or MTSI.

The judgment is affirmed.