Patricia **BOYETTE**, Mother of Joseph D. Rutherford, Jr., Deceased, Plaintiff/Appellant,

v.

**TRANS WORLD AIRLINES, INC.,** et al., Defendants/Respondents.

No. 71374.

Missouri Court of Appeals, Eastern District, Division Two.

July 8, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 1997.

Application to Transfer Denied Nov. 25, 1997.

Hinshaw & Culbertson, Michael A. Lawder, Frans J. von Kaenel, St. Louis, for plaintiff/appellant.

Holtkamp, Liese, Beckemeier & Childress, P.C., Leo W. Nelsen, Richard J. Mehan, Sr., St. Louis, Blatt Hammesfahr & Eaton, Kenneth D. Ross, Hallie J. Miller, Chicago, IL, for defendants/respondents.

PUDLOWSKI, Judge.

This is an appeal by Patricia Boyette (Appellant) from the trial court's decision granting summary judgment for Trans World Express (TWE) and the City of St. Louis (City) in her wrongful death action for the death of her son, Joseph Rutherford (Rutherford). Because TWE and the City presented uncontested facts negating the element of duty, the judgment of the trial court is affirmed.

## I. Background

In reviewing the facts we do so in the light most favorable to the non-moving party, affording her all reasonable inferences therein. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). On April 2, 1989, Rutherford and three co-workers took TWE flight 7145 from Memphis, Tennessee to Sioux City, Iowa with a change of planes at Lambert International Airport. Andrea Lake (Lake) was the sole flight attendant on this flight. Prior to departure from Memphis, Rutherford had at least two drinks containing alcohol. During a ground delay in Memphis, and for the duration of the Memphis to St. Louis flight, Rutherford consumed six more alcoholic drinks.

Once TWE flight 7145 arrived in St. Louis, Rutherford deplaned onto the tarmac with the other passengers. While on the way to the terminal, Rutherford passed under a yellow rope and climbed onto a luggage tug that was idling on the tarmac. Britney Callier (Callier), a TWE gate agent, radioed his supervisor and requested airport security. The supervisor contacted airport security at 4:23 p.m. Upon learning of the dispatch to airport security, Rutherford slid off the tug and entered the terminal without further incident. At 4:33 p.m. Callier's supervisor contacted airport security and informed them that their help was no longer needed.

Once inside the terminal Rutherford made his way toward the gate from which his connecting flight was departing. On the way to the gate, Rutherford stole an electric golf cart and began driving around the gate area. Callier, who at this point had returned to the terminal to begin boarding passengers on another outbound flight, chased Rutherford on foot in an effort to stop him or to maintain sight of him until security could be summoned.

Callier eventually cornered Rutherford in an alcove off of the D concourse and informed Rutherford's co-workers that Rutherford was going to jail. However, Callier was unable to locate Rutherford in the alcove, although Rutherford's friend and co-worker, Chris Traylor (Traylor), was able to find Rutherford in a room identified as Room D–231.

Room D–231 was a cleaning room which had been left unlocked by a piece of heavy paper between the door and the door frame. Inside room D–231 there was a small door located on the wall about three feet above the floor and about 18 square inches which opened to a trash chute leading to a trash compactor some ten feet below on the tarmac. The trash compactor was equipped with a photoelectric eye. Whenever something was dumped into the compactor and the eye's beam was blocked for more than 8 seconds, the compactor would begin to operate.

Once inside Room D–231, Traylor assisted Rutherford to climb into the trash chute. Rutherford climbed too far into the trash chute and fell into the trash compactor ten feet below, injuring himself in the fall. Meanwhile, unable to locate Rutherford, Callier contacted his supervisor who in turn contacted the airport police. By this time Lake had joined the search for Rutherford. At 4:46 p.m. Officer Robert Moton (Moton) responded to the gate area where Rutherford had commandeered the golf cart. Moton then searched the alcove and Room D–231 but was unable to locate Rutherford.

At 4:51 p.m. Traylor informed Callier, Moton and Lake that Rutherford had fallen into

the trash compactor. Moton, Callier and Lake then entered Room D–231 and looked through the door of the trash chute, seeing Rutherford bloodied and unresponsive. Moton then walked outside the room to contact emergency personnel with his radio. Callier left the room and ran down to the tarmac in an attempt to offer assistance to Rutherford. At 4:52 p.m. Lake, who had remained in the room observing Rutherford, heard the motor of the trash compactor start. Lake ran out of the room and told Moton that the trash compactor had started, who radioed for assistance. While Callier and emergency personnel searched for a deactivation switch, Rutherford was compacted by the machine at 4:52 p.m. At 4:56 p.m. emergency personnel located the cut-off switch for the trash compactor and turned off the machine. Rutherford was then removed from the compactor and transported to a nearby hospital where he was pronounced dead on arrival.

On March 31, 1992, the appellant filed a wrongful death action against TWE, the City of St. Louis, and others. In her petition, the appellant claimed TWE acted negligently by chasing Rutherford through the concourse after he commandeered the golf cart and, once he was discovered in the trash compactor, failing to take necessary steps to ensure Rutherford's safety. The appellant claimed the City acted negligently by failing to have an emergency deactivation switch in room D–231 and by failing to have warning signs posted explaining the narrow door of the trash chute led to a trash compactor. The appellant also claimed the City was negligent by failing to render aid to Rutherford once the City discovered him in the trash compactor. On November 14, 1994, the trial court granted TWE and the City's motions for summary judgment. From this order and judgment, the appellant appeals.[1]

## II.  Standard of Review

Before addressing the merits of plaintiff's appeal, it is important to examine the law which governs this court in reviewing a grant of summary judgment. This court is guided

by the recent decision of our Supreme Court in *ITT Commercial Finance v. Mid–Am. Marine,* supra. Our review of a grant of summary judgment is essentially *de novo. ITT,* 854 S.W.2d at 376. Because the defendants were the parties moving for summary judgment in the instant case, they will be entitled to summary judgment if they show any one of the following three items: "1)facts that negate *any one* of the claimant's elements fact, 2) that the non-movant, after an adequate period of discovery, has not been able to produce evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or 3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense." *ITT,* 854 S.W.2d at 381. With this in mind, we turn now to the appellant's appeal.

### III.  Appellant's Appeal

■ The appellant argues the trial court erred in granting the City and TWE's motions for summary judgment on her negligence cause of action. It is well-established law that in order to maintain a negligence cause of action the appellant must establish: "1) the existence of a duty on the part of the defendant to protect [Rutherford] from injury; 2)a breach of that duty; 3) that defendant's breach proximately caused [Rutherford's] injuries." *Krause v. U.S. Truck Co., Inc.,* 787 S.W.2d 708, 710 (Mo. banc 1990); *Strickland v. Taco Bell Corp.,* 849 S.W.2d 127, 131 (Mo.App. E.D.1993). If the appellant fails to show the existence of a duty owed by the City or by TWE to Rutherford, she cannot maintain a negligence cause of action. *Andres v. Alpha Kappa Lambda Fraternity,* 730 S.W.2d 547 (Mo. banc 1987).

A. *Whether TWE, by following Rutherford after he commandeered the golf cart and asked him to stop, extended the duty common carriers owe to their passengers.*

In her first point on appeal, the appellant argues the trial court erred in concluding

---

1. The trial court granted Trans World Airlines' summary judgment motion. The appellant does not appeal this grant of summary judgment. At oral argument the appellant explained the peti-

tion with respect to all other defendants, except TWE and the City, had been voluntarily dismissed or a settlement had been reached. This case, then, is ripe for appeal.

that TWE did not gratuitously assume a duty of care owed to Rutherford after he had entered the terminal. The appellant contends the pursuit of Rutherford by TWE employees after he commandeered the golf cart expanded the duration of the duty of care TWE, as a common carrier, owed to Rutherford. We disagree.

■ Missouri has long recognized a special relationship exists between a common carrier, like TWE, and its passengers. "A common carrier has a duty to exercise the highest degree of care to safely transport its passengers and protect them while in transit." *Collier v. Bi–State Dev. Agency*, 700 S.W.2d 479, 480 (Mo.App. E.D.1985). But this duty exists only so long as the special relationship of passenger and carrier exists. *Meyer v. St. Louis Pub. Serv. Co.*, 241 Mo. App. 1057, 253 S.W.2d 525 (1952). The carrier discharges its duty once the passenger reaches a reasonably safe place. *Sanford v. Bi–State Dev. Agency*, 705 S.W.2d 572 (Mo. App. E.D.1986). In the instant case it is without dispute Rutherford safely reached the airport. Thus, TWE fulfilled the duty it owed Rutherford as a common carrier once he reached the airport terminal. At that point TWE's duty as a common carrier was discharged.[2]

■ At oral arguments the appellant suggested that even if TWE's duty as a common carrier was discharged once Rutherford reached the airport terminal, a new duty arose once TWE initiated pursuit of Rutherford. We disagree. Even if we were to assume, *arguendo*, that a new duty arose once TWE initiated a pursuit of Rutherford while he was on the golf cart, TWE showed facts demonstrating the final element necessary for a negligence cause of action—proximate cause—cannot be met.

■ " 'Proximate cause' is the causal connection between the actor's conduct and the resulting injury. [Cite omitted] . . . . The test is simply whether, *after the occurrence*, the injury appears to be the reasonable and probable consequence of the act or omission.[Cite omitted]." [Emphasis in original]. *Jones v. Ames*, 901 S.W.2d 160, 163 (Mo.App. E.D.1995). By contrast an "intervening resulting cause" is a new and independent force which so interrupts the chain of events initiated by defendant's negligence as to become the responsible, direct, proximate cause of the injury. *Vann v. Town Topic, Inc.*, 780 S.W.2d 659 (Mo.App.1989). Thus, the intervening cause becomes the proximate cause of the injury, and the first cause becomes the remote cause only when the chain of events leading to the injury is so broken that the result is no longer the natural and probable consequence of the primary cause or one which ought to have been anticipated. *Love v. Deere and Co.*, 684 S.W.2d 70 (Mo.App. 1985).

■ Recognizing that whether a duty exists is a question of law for the court to decide, *Strickland*, 849 S.W.2d at 131–132, the appellant asks this court to hold that a reasonable and probable consequence of Callier's pursuit of Rutherford was his eventual death. This we will not do. The uncontested facts show that several minutes after the pursuit ended Rutherford, with the aid of his friend, climbed into the trash chute and eventually fell into the compactor where he was killed. Clearly, Rutherford's actions constituted the intervening cause which became the proximate cause of his death. Callier's pursuit of Rutherford at most could be considered a remote cause of his injuries. We hold, therefore, that there is no causal connection between Callier's pursuit and Rutherford's death. *See McVicar v. W.R. Arthur & Co.*, 312 S.W.2d 805, 814 (Mo.1958) ("Mischief which no reasonable person would have anticipated cannot be taken into account as a basis upon which to predicate a wrong in the law of negligence").

Because TWE's duty as a common carrier was discharged once Rutherford reached the airport terminal and because, even assuming a new duty arose from Callier's pursuit, there is no causal connection between Calli-

---

2. This decision is in no way to be read as deciding whether Rutherford had reached a reasonably safe place upon deplaning or whether he reached the reasonably safe place only upon entering the terminal. We assume, without deciding, the airport terminal is a reasonably safe place.

er's pursuit and Rutherford's death, the trial court's grant of summary judgment for TWE is affirmed. Point one is denied.

B. *Whether the City may invoke the doctrine of sovereign immunity where the operation of the airport is a proprietary and not a governmental function.*

In her second point on appeal the appellant contends the trial court erred in granting the City's motion for summary judgment in that the City, as the owner and operator of the airport, owed Rutherford a duty of care because he was an invitee. The City argues it is immune from liability under the doctrine of sovereign immunity and thus only if a dangerous condition existed as set forth in § 537.600 RSMo can the City be liable.

We need not reach the issues of sovereign immunity since we conclude hereinafter that the City had no duty to appellants.

C. *Whether the City owed a duty to Rutherford, who upon climbing into the trash chute became a trespasser.*

In her second point on appeal the appellant contends the City owed Rutherford a duty because he was an invitee. The City contends once Rutherford entered room D–231 he became an unknown trespasser and thus the City owed him no duty. Because it owed him no duty, the City contends, the appellant cannot maintain her action for negligence against the City, *Andres*, supra, and thus summary judgment was proper.

Missouri has classified individuals who enter onto another's land into three categories: invitee, licensee and trespasser. In *McVicar* the Supreme Court explained the meaning of the different terms:

A trespasser is defined as one who enters onto the property of another without a privilege to do so created by the possessor's consent or otherwise. Thus, an adult who enters onto the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasure or curiosity is a

trespasser. A licensee is one who enters for his own purposes and with the permission, express or implied, of the possessor. An entrance for the entrant's own purpose distinguishes a licensee from an invitee.

*McVicar*, 312 S.W.2d at 812. The appellant conceded at oral argument that the time at which Rutherford's status should be determined is when he was in the trash compactor. This concession complies with *McVicar*'s rule that the status of the individual is determined "at the time of the injury ... [in order to determine] what duty, if any, is owed to plaintiff by the defendant." *McVicar*, 312 S.W.2d at 811. Rutherford did not enter the trash chute or the compactor with the City's permission. Nor did he enter the trash chute or compactor for any purpose for the City, but entered for his own purpose; namely, to escape arrest. Clearly, then, Rutherford was a trespasser once he was in the trash compactor. *Cochran v. Burger King Corp.*, 937 S.W.2d 358 (Mo.App. W.D. 1996).

But Missouri recognizes "[w]here a trespasser is actually discovered in a position or situation of peril, there is a duty to exercise ordinary care to avoid injuring him, which duty may be breached either by active conduct or by omission to act." *McVicar*, 312 S.W.2d at 814. The appellant contends that once the City discovered Rutherford in the dumpster and saw that he was injured the City owed Rutherford a duty to rescue him from the compactor, and its failure to do so breached the duty of ordinary care the City owed him. We disagree.

Missouri does not require the exercise of ordinary care to include a duty to rescue. Prosser and Keeton on Torts, § 56 at 375 (5th ed.1984); *Strickland v. Taco Bell*, supra. Thus, it cannot be said that the failure of Moton to rescue Rutherford from the dumpster breached the duty to use ordinary care.

The appellant also argues that the absence of an emergency deactivation switch in Room D–231 constituted a dangerous condition on the City's property and thus the failure to install the switch constituted

negligence on the part of the City. This argument is without merit. As discussed above Rutherford was uninjured until he entered the trash chute, at which point he was a trespasser.[3] Because he was a trespasser, the only duty the City owed Rutherford was to refrain from intentionally placing hidden dangers to injure him:

> Trespassers take the premises, for better or for worse, as they find them, assuming the risk of injury from their condition, "the owner being liable only for hidden dangers intentionally placed to injure them or for any willful, illegal force used against them." [Cite omitted]. This is the rule whether the trespasser is known or unknown.

*Politte v. Union Electric Co.*, 899 S.W.2d 590, 592 (Mo.App. E.D.1995). Thus, only if the City put the trash compactor on the premises intentionally to injure Rutherford or for an illegal or willful force to use against him would a duty arise. Clearly this was not the reason for the trash compactor. Point denied.

The judgment of the trial court is affirmed.[4]

CRANE, P.J., and GERALD M. SMITH, J., concur.

---

3. The appellant contends at the time Rutherford entered Room D–231 he was an invitee or at least a licensee. The City argues he was a trespasser. Because the status of the individual is determined at the time of the injury, *McVicar, supra,* we need not determine Rutherford's status at the time he entered the room. Furthermore, because of the holding in *Politte, supra,* we need not and thus do not address whether the trash compactor or its lack of warning signs constituted a dangerous condition.

4. The City's motion to strike portions of appellant's brief is denied.