**Courtney Anne BEHRENHAUSEN and Sarah Elizabeth Behrenhausen, Appellants,**

v.

**ALL ABOUT TRAVEL, INC., Respondent,**

**U.S. Air, Inc., Respondent.**

No. WD 54283.

Missouri Court of Appeals, Western District.

March 17, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1998.

Application for Transfer Denied June 16, 1998.

Timothy M. Aylward, Karl Zobrist, Phillip R. Dupont, Sarah M. Yehle, Blackwell, Sanders, Matheny, Weary & Lombardi, LLP, Kansas City, for appellants.

John W. Cowden, Curtis Landherr, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, Susan Getzendanner, Donna L. McDevitt, Tiffanie N. Cason, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for respondent U.S. Air, Inc.

James L. Sanders, Arlen L. Tanner, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Kansas City, for respondent.

Before ULRICH, C.J., P.J., and HOWARD and RIEDERER, JJ.

ULRICH, Chief Judge, Presiding Judge.

Courtney and Sarah Behrenhausen appeal from the trial court's order granting USAir's motion to dismiss and granting summary judgment in favor of All About Travel, Inc. in the Behrenhausens' wrongful death action against USAir and All About Travel, Inc. The Behrenhausens are daughters of Roger Behrenhausen who was murdered in the parking garage of the Kansas City International Airport by Grady Motes. Mr. Motes orchestrated the murder utilizing information he obtained from All About Travel and USAir regarding Mr. Behrenhausen's flight schedule. The Behrenhausens raise two issues on appeal. They contend that the trial court erred by (1) granting USAir's motion to dismiss where USAir owed a duty to Mr. Behrenhausen not to disclose his flight schedule and where USAir's disclosure of Mr. Behrenhausen's flight schedule was the cause in fact and proximate cause of Mr. Behrenhausen's death and (2) granting summary judgment in favor of All About Travel where All About Travel owed a duty to Mr. Behrenhausen not to disclose his flight schedule and where All About Travel's disclosure of Mr. Behrenhausen's flight schedule was the cause in fact and proximate cause of Mr. Behrenhausen's death. The judgment of the trial court is affirmed.

## FACTS

Roger Behrenhausen and his companion, Dani Householter, arrived in Kansas City Missouri on a USAir flight from New York on October 25, 1993. Shortly after their arrival, Grady Motes a contract killer allegedly hired by David Langhorn, the ex-boyfriend of Ms. Householter, murdered Mr. Behrenhausen in the parking lot of the Kansas City International Airport ("KCI").

Mr. Langhorn obtained Mr. Behrenhausen's flight schedule from All About Travel, a travel agency with which Mr. Langhorn and his company, Johnson Food Equipment, regularly did business. Mr. Langhorn contacted Patricia Burkhead, an employee at All About Travel, to obtain Mr. Behrenhausen's flight schedule. Mr. Langhorn asserted that Mr. Behrenhausen was a "client or business associate." Ms. Burkhead reviewed computer records to determine Mr. Behrenhausen's return schedule but did not ascertain whether Mr. Behrenhausen consented to such inquiry. Mr. Behrenhausen's flight information was not available on the computer, however, because Mr. Behrenhausen had not purchased his ticket through All About Travel. Ms. Burkhead, thus, called USAir and was told by an employee when Mr. Behrenhausen's return flight was scheduled. The USAir em-

ployee did not ask Ms. Burkhead the purpose of or justification for the inquiry.

A week and a half before the killing, Grady Motes was provided his ticket to come to Kansas City to kill Mr. Behrenhausen. One week before the murder, Mr. Motes bought the shotgun he used to kill Mr. Behrenhausen. When Mr. Motes flew to Kansas City on October 21, 1993, he brought the shotgun with him. This was the third time that Mr. Motes had traveled to Kansas City with plans to kill Mr. Behrenhausen. Additionally, Ms. Householter had previously received a brochure from Mr. Langhorn threatening Mr. Behrenhausen.

Mr. Motes shot Mr. Behrenhausen three times with the shotgun at close range in the parking lot of KCI shortly after Mr. Behrenhausen deplaned from the USAir flight. Mr. Motes testified that knowing the precise information learned from USAir and All About Travel about Mr. Behrenhausen's return flight enabled him to arrange and execute an ambush in the underground parking lot where he could commit the crime and escape undetected. Mr. Motes testified that without knowing Mr. Behrenhausen's flight information, he would not have executed the victim at the airport. Mr. Motes further testified that while he and Mr. Langhorn had initially planned to murder Mr. Behrenhausen and Ms. Householter's minor daughter at Ms. Householter's home, they had decided that KCI provided a better location for the murder due to the ability to escape undetected. Documents detailing Mr. Behrenhausen's movements that were compiled by Mr. Langhorn were later found in Mr. Motes's rental car.

Mr. Langhorn committed suicide before he could be apprehended by law enforcement authorities.

Courtney and Sarah Behrenhausen, the only children of Mr. Behrenhausen, filed suit for the wrongful death of their · father. USAir filed a motion to dismiss. The trial court granted USAir's motion to dismiss for failure to state a claim, finding that under *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852 (Mo. banc 1993), the Behrenhausens' claims were insufficient to show that USAir's actions were the "but for" cause of Mr. Behrenhausen's murder or that the mur-

der of Mr. Behrenhausen was a natural and foreseeable consequence of USAir's alleged negligence in releasing Mr. Behrenhausen's flight schedule. All About Travel filed a motion for summary judgment on the same grounds argued by USAir in its motion to dismiss. The trial court granted All About Travel's motion for summary judgment and amended its previous order of dismissal with respect to USAir by entering summary judgment in favor of USAir. This appeal followed.

## STANDARD OF REVIEW

Appellate review of the grant of either a motion to dismiss or a motion for summary judgment is similar in that in both instances the court engages in an essentially de novo review of an issue of law. *Jordan v. Willens*, 937 S.W.2d 291, 293 (Mo.App.1996). In reviewing the grant of summary judgment, however, the evidence is viewed in the light most favorable to the non-moving party, and the nonmoving party is given all reasonable inferences from the record in determining whether there is any genuine issue of material fact. *Id.*

By contrast, appellate review of the grant of a motion to dismiss is limited to an examination of the pleadings to determine whether the Petition invokes principles of substantive law. *Id.* The pleadings are liberally construed and all facts alleged are accepted as true and construed in the light most favorable to the plaintiff. *Id.*

## I. THE TRIAL COURT DID NOT ERR BY GRANTING USAIR'S MOTION TO DISMISS

As their first issue on appeal, the Behrenhausens contend that the trial court erred by granting USAir's motion to dismiss. The Behrenhausens specifically contend that their petition alleged sufficient facts to assert a claim that USAir owed a duty to Mr. Behrenhausen to keep his flight schedule confidential, that USAir breached that duty by disclosing Mr. Behrenhausen's flight schedule to All About Travel and that this disclosure was the cause in fact and proximate cause of Mr. Behrenhausen's death.

Negligence is the failure to exercise the degree of care that a reasonably prudent

and careful person would use under the same or similar circumstances. *Jackson v. City of Blue Springs,* 904 S.W.2d 322, 329 (Mo.App. 1995); *Kary v. Missouri Highway & Transp. Comm'n,* 687 S.W.2d 692, 693 (Mo.App.1985). "The elements of a negligence claim under Missouri law are proof of (1) existence of a duty on the part of the defendant to protect plaintiff from injury, (2) failure of the defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure." *Nappier v. Kincade,* 666 S.W.2d 858, 860 (Mo.App.1984). The Behrenhausens' injury resulting from their father's death is not disputed. Whether the facts support the finding that the defendants owed a duty to not release information regarding Mr. Behrenhausen's flight schedule; whether they breached the duty; and whether their breach directly caused Mr. Behrenhausen's death must be determined.

■ The general rule in Missouri is that an owner of a business property does not have a duty to protect invitees from the deliberate criminal attack of a third person. *Claybon v. Midwest Petroleum Co.,* 819 S.W.2d 742, 744–45 (Mo.App.1991); *Faheen by Hebron v. City Parking Corp.,* 734 S.W.2d 270, 272 (Mo.App.1987). Two exceptions to this general rule exist. *Id.* The owner of business property may be liable when "special relationships" or "special facts and circumstances" exist. *Id.* (citing *Meadows v. Friedman R.R. Salvage Warehouse,* 655 S.W.2d 718, 721 (Mo.App.1983)). "Special relationships" arise where a party entrusts himself to the protection of another and relies upon that person to provide a place of safety. *Id.* Missouri courts have long recognized that a special relationship exists between a common carrier, like USAir, and its passengers. *Boyette v. Trans World Airlines, Inc.,* 954 S.W.2d 350, 354 (Mo.App. 1997). "A common carrier has a duty to exercise the highest degree of care to safely transport its passengers and protect them while in transit." *Id.* (quoting *Collier v. Bi-State Dev. Agency,* 700 S.W.2d 479, 480 (Mo. App.1985)). In other words, the law imposes upon the carrier the duty to exercise the highest degree of care while the passenger-carrier relationship exists. *Trader v. Blanz,* 937 S.W.2d 325, 327 (Mo.App.1996). This duty includes the protection of passengers from all known and reasonably foreseeable dangers "at least until the passenger has been discharged from the carrier at a reasonably safe place." *Id.* (quoting *Sanford v. Bi-State Dev. Agency,* 705 S.W.2d 572, 575 (Mo. App.1986)).

■ Once the passenger has safely alighted from the carrier and is upon the street or sidewalk, he is no longer a passenger and the carrier is no longer responsible as such. *Id.* Liability, therefore, will not exist for injuries sustained by former passengers in the course of traveling from the point of debarkation to the ultimate destination because once the passenger safely alights from the carrier and is upon the street, the passenger-carrier relationship is terminated. *Id.*

In *Boyette,* an airline passenger suffered fatal injuries when he slid down a trash chute into a compactor at the city airport in an attempt to hide from the airline employees who were pursuing him. *Boyette,* 954 S.W.2d at 352. The compactor began to operate and fatally injured the passenger. *Id.* at 353. The court affirmed the grant of summary judgment against the plaintiffs in their wrongful death action. *Id.* at 354. The court reasoned, that the airline "fulfilled the duty it owed [the passenger] as a common carrier once he reached the airport terminal." *Id.; see also Trader,* 937 S.W.2d at 327 (finding taxi company did not owe duty to passenger who was fatally stabbed shortly after exiting cab because "upon [the passenger's] safe debarkation from the cab, the passenger-carrier relationship terminated and [the cab company] no longer owed him a duty of protecting him from all known and reasonably foreseeable dangers"); *Sanford,* 705 S.W.2d at 572 (finding carrier had discharged its duty to passenger who walked in front of bus and was struck by passing vehicle because he was dropped off in a place of safety with a protected path to the sidewalk).

■ As in *Boyette,* the special common carrier-passenger relationship existed between USAir and Mr. Behrenhausen. USAir, therefore, owed a duty to Mr. Behrenhausen to safely transport him from the point of origin of the USAir flight to the airport terminal at KCI where he deplaned. As the court in *Boyette* recognized, however, the common-carrier-passenger relationship

existed only while Mr. Behrenhausen was in transit. USAir safely transported Mr. Behrenhausen to the airport terminal at KCI where he deplaned. Having safely deplaned from the USAir flight, Mr. Behrenhausen was no longer in transit, and, hence, USAir's duty was discharged. Because USAir's duty to Mr. Behrenhausen was discharged at the airport terminal, USAir was not liable for Mr. Behrenhausen's death at the KCI parking lot just as the airline in *Boyette* was not liable for the fatal injuries its passenger suffered beyond the airline's terminal.

The Behrenhausens argue, however, that USAir's duty to Mr. Behrenhausen extended to the parking lot because USAir's duty as a common carrier included the duty not to disseminate his flight schedule to All About Travel. In making this argument, however, the Behrenhausens have failed to cite any statute or case, and research has uncovered none, imposing a duty on a common carrier to keep its passengers' flight itinerary confidential. While keeping passenger's flight itineraries confidential seems a good practice, an imposition of such conduct as a duty is more appropriately left to the legislatures. Because USAir's duty as a common carrier does not encompass a general legal obligation to keep passengers' flight schedules confidential, the "special relationships" exception to liability is inapplicable.

■ Whether USAir is liable, as a property owner, under the "special facts and circumstances" exception to liability is next determined. The "special facts and circumstances" exception encompasses two theories: (1) the intentional infliction of injury by known and identifiable third persons; or (2) frequent and recent instances of violent crimes against persons on the premises by unknown assailants. *Claybon*, 819 S.W.2d at 744-45. Under the first theory, a duty may be recognized when a person, known to be violent, is on the premises, or an individual is present who has acted in such a way as to indicate danger. *Id.* The second theory, referred to as the "violent crimes" exception, imposes a duty on a landowner for premises liability when certain elements exist. *Id.*

■ The facts and circumstances of this case do not support the imposition of a duty on USAir for the criminal acts of a third person under the special facts and circumstances exception. The first theory of the special facts and circumstances exception requires that Mr. Langhorn and/or Mr. Motes be "known and identifiable" to USAir as violent persons. The Behrenhausens, however, did not allege that USAir knew of the existence of Mr. Langhorn or Mr. Motes and their nefarious scheme. USAir had no contact with either Mr. Langhorn and Mr. Motes before Mr. Behrenhausen's death. All About Travel obtained Mr. Behrenhausen's flight information on behalf of Mr. Langhorn. The Behrenhausens do not allege that during their father's murder, or at any other time prior to the occurrence, USAir knew or had reason to know that Mr. Motes, or anyone else, intended to harm their father. The first theory of the special facts and circumstances exception to liability is, therefore, inapplicable.

The second theory to the special facts and circumstances exception is also inapplicable. The Behrenhausens did not allege that instances of violent crime had occurred at KCI against other persons by other unknown assailants. Even had a pattern of violent crime within the KCI parking lot been established, the Behrenhausens did not allege that USAir exercised control over the parking facilities. Because the special circumstances exception is inapplicable, USAir did not owe a duty to Mr. Behrenhausen. The trial court, therefore, did not err in granting USAir's motion to dismiss. Point one is denied.

## II. THE TRIAL COURT DID NOT ERR BY ENTERING SUMMARY JUDGEMENT IN FAVOR ALL ABOUT TRAVEL

As their second issue on appeal, the Behrenhausens contend that the trial court erred by granting summary judgment in favor of All About Travel. The Behrenhausens specifically contend that an issue of material fact exists regarding whether All About Travel owed a duty to Mr. Behrenhausen not to disclose his flight schedule and whether the disclosure of Mr. Behrenhausen's flight schedule was the cause in fact and proximate cause of Mr. Behrenhausen's death.

■ One may be charged with a duty of care to take precautions to protect others

from intentional criminal acts of third persons. *Claybon*, 819 S.W.2d at 744–45; *Irby v. St. Louis County Cab Co.*, 560 S.W.2d 392, 395 (Mo.App.1977). Liability is imposed, however, only where one should realize through special facts within his knowledge or a special relationship that an act or omission exposes someone to an unreasonable risk. *Id.* The Behrenhausens admit that no special relationship existed between Mr. Behrenhausen and All About Travel.

Whether the special facts and circumstances exception is applicable so as to impose a duty on All About Travel must, therefore, be determined. In making this determination, whether the evidence supports a finding that Mr. Behrenhausen's death resulted from the intentional infliction of injury by known and identifiable third persons or that frequent and recent instances of violent crimes against persons on the premises by unknown assailants occurred is determined. *Claybon*, 819 S.W.2d at 744–45.

The facts and circumstances of this case do not support an imposition of a duty on All About Travel under the special facts and circumstances exception. The first theory requires either that All About Travel knew that Mr. Langhorn was known to be violent or that Mr. Langhorn acted in a way to indicate danger when requesting the flight schedule for Mr. Behrenhausen. Neither occurred here. Primarily, no evidence has been adduced to support a finding that Mr. Langhorn was known by All About Travel to be a violent person. Additionally, Mr. Langhorn's request for Mr. Behrenhausen's flight schedule does not support a finding that Mr. Langhorn acted in a way to indicate danger to Mr. Behrenhausen would occur if All About Travel acquired the requested information. Mr. Langhorn was a long-time business client of All About Travel and frequently used the services of All About Travel to arrange both his business and personal trips. Mr. Langhorn requested Mr. Behrenhausen's flight schedule under the guise that Mr. Behrenhausen was a business client, thereby proffering a reason for the requested information that related directly to the business relationship between Mr. Langhorn and All About Travel. Mr. Langhorn's inquiry into Mr. Behrenhausen's flight schedule lacked any indicators that he intended to use the information to facilitate a goal of harming Mr. Behrenhausen. The first prong of the special facts and circumstances exception, therefore, is inapplicable.

The second theory to the special facts and circumstances exception is likewise inapplicable. No evidence was presented that instances of violent crimes had occurred at KCI against other persons by other unknown assailants. Secondly, even had a pattern of violent crime within the parking lot been established, no showing was made that All About Travel had control over the parking facility. Because the special circumstances exception is inapplicable, All About Travel did not owe a duty to Mr. Behrenhausen. The trial court, therefore, did not err in granting summary judgment in favor of All About Travel. Point two is denied.

The judgment of the trial court is affirmed.

All concur.