**Phyllis FERGUSON, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

No. Civ.A. 1:98CV2887CAP.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 7, 2000.

William R. Waldrop, James O. Wilson, Jr., Waldrop & Wilson, Marietta, GA, for Plaintiff.

Lisa Lynn Ballentine, David Michael Brown, Tracie Y. Johnson, Smith Gambrell & Russell, Atlanta, GA, for Defendant.

### ORDER

PANNELL, District Judge.

The plaintiff filed the instant wrongful death action, alleging that the defendant's negligence proximately caused her husband's death. This matter is currently before the court on the defendant's motion for summary judgment.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case was originally filed in the state court of Fulton County, Georgia, Civil Action No. 98–VS–144001–H, and was removed to this court pursuant to 28 U.S.C. §§ 1332 and 1441. The plaintiff is the spouse of William Ferguson (the "decedent"). The defendant, Trans World Airlines, Inc. ("TWA"), is a commercial airline, providing passenger service throughout the United States and abroad. The decedent, a chronic smoker, had a long history of breathing difficulties and had been diagnosed with some pulmonary difficulties. On September 10, 1996, the plaintiff and her husband were passengers on TWA Flight 24 from Seattle, Washington, to Atlanta, Georgia, with a midway stop in St. Louis, Missouri. The total scheduled flying time of the flight was three hours and forty-five minutes. Shortly after the plane left Seattle, the decedent reported to Flight Attendant John Hunter that he was having difficulty breathing. Attendant Hunter asked whether the decedent wanted a bottle of oxygen, and the decedent responded affirmatively. Consequently, Attendant Hunter administered the decedent a portable bottle of oxygen. Thereafter, either Attendant Hunter or one of the other flight attendants notified Captain Carl Catlin, the pilot in command, that the decedent was having difficulty breathing and that oxygen had been provided to him.

The oxygen bottle provides approximately one hour of oxygen. After the decedent placed the oxygen mask on his face, he slept for about an hour. Having exhausted the oxygen bottle, the decedent awoke and was unable to breathe. The plaintiff called for the flight attendants, who, after discussing the propriety of giving the decedent another bottle of oxygen for approximately twenty minutes, provided him with a second bottle of oxygen and placed the mask on him. As the decedent's condition continued to deteriorate, Flight Attendant Charles, concerned for the decedent, explained to the plaintiff that the decedent should be examined by paramedics before he was allowed to board his connecting flight from St. Louis to Atlanta. Captain Catlin was informed of the decedent's deteriorating condition, and he asked that paramedics meet the plane in St. Louis. Shortly thereafter, the decedent complained to the attendants that he wasn't receiving sufficient oxygen. Attendant Charles tried to convince the decedent that although the bag was not fully inflated he was receiving oxygen at the highest flow rate.

The decedent, the plaintiff, and the attendants continued to discuss whether the decedent was receiving adequate oxygen.

Meanwhile, the decedent's breathing continued to worsen; consequently, Attendant Hunter retrieved a third oxygen bottle. Then, Attendant Hunter asked if there was a doctor on board. Dr. Kenneth Smith, a neurosurgeon, after "quite a while" came to the decedent's seat and briefly spoke with him. Dr. Smith did not perform any form of physical examination but assured the attendants that he would be fine and that there was no reason to divert the plane from St. Louis. Simultaneous with Dr. Smith's discussion with the decedent, William Sult, a registered nurse, evaluated the decedent. Although Nurse Sult disagreed with Dr. Smith's evaluation and felt the decedent was in danger, he did not verbally contradict Dr. Smith's assurances to the flight attendants. Despite his assurances that the decedent could "make it" to St. Louis, Dr. Smith later testified that the decedent "was breathing hard ... looked like he was doing satisfactorily, but ... there was obviously something wrong with him." After the cursory examination by Dr. Smith, the decedent's condition dramatically deteriorated.

Some time thereafter, Nurse Sult and Dr. Smith returned to the decedent. Dr. Smith attempted to inject Epinephrine into the decedent's heart; however, there were no cardiac needles in the plane's emergency kit. Nurse Sult with the aid of Dr. Smith administered Cardiac Pulmonary Resuscitation ("CPR") for approximately 45 minutes until the plane landed and they were relieved by an emergency medical team. The decedent was pronounced dead-on-arrival at the hospital in St. Louis.[1]

1. The plaintiff argues that the decedent suffered a cardiac arrest. No autopsy, however, was performed on his body. The defendant does not concede that the decedent had a cardiac arrest. In light of the decedent's health history and the circumstances of his death, however, the court finds that for purposes of summary judgment he suffered full cardiac arrest.

## II. LEGAL DISCUSSION

The defendant seeks summary judgment in its favor on all the plaintiff's claims, by arguing that (1) the plaintiff cannot establish essential elements of her wrongful death claim and (2) the defendant did not breach any standard of care owed to the decedent by failing to equip its aircraft with enhanced medical kits or defibrillators. Conversely, the plaintiff argues that the defendant breached its heightened duty of care as a common carrier, and the defendant's flight crew failed to comply with the defendant's written policies and procedures and abdicated their responsibility to determine the decedent's medical condition. Further, the plaintiff contends that Captain Catlin failed to timely divert the aircraft.

### A. *CHOICE OF LAW*

■ Initially, the parties disagree as to the applicable state law to apply to the plaintiff's claims. The plaintiff argues that Georgia's choice of laws doctrine requires that Missouri statutory law be followed. Accordingly, the plaintiff has pled Missouri's wrongful death statute as applicable to this claim, pursuant to O.C.G.A. § 9–11–43(c). Further, the plaintiff argues that the non-statutory or common law claims of negligence must be decided under Georgia law, because Georgia applies its own interpretations of the common law. *See Shorewood Packaging Corp. v. Commercial Union Insurance Company,* 865 F.Supp. 1577 (N.D.Ga.1994). To this end, the plaintiff argues that the court in interpreting a Missouri wrongful death statute must use Georgia common law in order to apply the common law negligence elements

of duty, breach and causation. The court notes that in practice the plaintiff's argument would lead the court to apply Georgia law. Conversely, the defendant contends that Missouri statutory and common law are controlling, simplistically but correctly arguing that the "law of the place where the tort or wrong has been committed is the law by which liability is determined." *Risdon Enterprises v. Colemill Enterprises,,* 172 Ga.App. 902, 324 S.E.2d 738 (1984).

Despite the difficulty in determining the injury's situs, the parties appear to agree that Missouri's wrongful death statute should apply. It is the interpretation of the elements of that statute and general negligence claims that are in contention. The plaintiff has pled and sufficiently proved Missouri law. The last events necessary to make the defendant liable for the decedent's death, however, occurred over either Kansas or Missouri. These events non-exclusively include Captain Catlin's decision not to divert the plane over Kansas, Missouri, or any of the states along the flight path from Seattle to St. Louis. The facts are unclear just where and when the pilot made his several decisions not to divert the plane. The injury determinative events also include the abrogation of the flight crew to make a decision regarding the decedent's care to Dr. Smith. Again, the facts are unclear as to over what state that decision was made. Given the plane's altitude (from 29,000 to 37,000 feet), speed and pitch variances, it is highly unlikely that any further discovery would satisfactorily determine where any of these decisions were made. Finally, the decision not to include cardiac needles, defibrillators, pulse oximiters or other cardiac care emergency medical implements were most likely made by TWA at its headquarters in Missouri. Accordingly, the exact situs of the injury or tort is basically impossible to determine. *See*

*Baltimore Football Club, Inc. v. Lockheed Corp.,* 525 F.Supp. 1206 (N.D.Ga.1981).

 In diversity cases, federal courts apply the law of the forum in which they sit. *See Cambridge Mutual Fire Insurance Company v. City of Claxton,* 720 F.2d 1230, 1232 (11th Cir.1983). As the forum state in this diversity action, Georgia's choice-of-law rules control. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *American Family Life Assur. Co. v. United States Fire Co.,* 885 F.2d 826, 830, reh'g denied, 892 F.2d 89 (11th Cir.1989). "Georgia adheres to the traditional choice of law system." *Broyles v. Bayless,* 878 F.2d 1400, 1402 (11th Cir.1989). In tort actions, as here, Georgia courts look to the law of the state where the injury was incurred. *See Risdon Enterprises,* 172 Ga. App. at 902, 324 S.E.2d at 738. Under Georgia law, the *lex loci delicti,* or place of the tort or wrong, determines the substantive rights of the parties. *See Risdon Enterprises,* 172 Ga.App. at 902, 324 S.E.2d at 740 (citing *Ohio Southern Express Co. v. Beeler,* 110 Ga.App. 867, 868(1), 140 S.E.2d 235 (1965)). " 'The place of the wrong is the place where . . . there takes place the last event necessary to make an actor liable for an alleged tort.' " *Wardell v. Richmond Screw Anchor Co.,* 133 Ga.App. 378, 210 S.E.2d 854 (1974) (quoting *Brooks v. Eastern Air Lines,* 253 F.Supp. 119, 121 (N.D.Ga. 1966)). The only exception to enforcement of a rule of foreign law is where the result will violate the public policy of this state. *See Terry v. Mays,* 161 Ga.App. 328, 329, 291 S.E.2d 44 (1982). Neither Missouri's wrongful death statute nor its law of negligence is repugnant to Georgia's laws. Accordingly, in light of all the facts contained in the record and with the above principles in mind, the court finds that Missouri law governs the substantive issues in this case.

Therefore, the court turns to Missouri law to ascertain whether the plaintiff can survive the defendant's summary judgment motion.

## B. *SUMMARY JUDGMENT*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir.1984). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Bradbury v. Wainwright*, 718 F.2d 1538, 1543 (11th Cir.1983). Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide genuine issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.*

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' *Id.* (citations omitted).

## C. *WRONGFUL DEATH AND NEGLIGENCE CLAIMS*

Missouri courts have long recognized that a special relationship exists between a common carrier, like the defendant, and its passengers. *See Boyette v. Trans World Airlines, Inc.*, 954 S.W.2d 350, 354 (1997). "A common carrier has a duty to exercise the highest degree of care to safely transport its passengers and protect them while in transit." Id. (quoting *Collier v. Bi–State Dev. Agency*, 700 S.W.2d 479, 480 (1985)). Simply, the law imposes upon the carrier the duty to exercise the highest degree of care so long as the passenger-carrier relationship exists. The carrier's heightened duty includes the protection of passengers, like the decedent, from all known and reasonably foreseeable dangers "at least until the passenger has been discharged from the carrier at a reasonably safe place." *See Trader v. Blanz*, 937 S.W.2d 325, 327 (Mo.App.1996)

(quoting *Sanford v. Bi–State Dev. Agency,* 705 S.W.2d 572, 575 (1986)).

■ The plaintiff asserts general negligence and wrongful death claims. Wrongful death is a statutory cause of action. *See Sullivan v. Carlisle,* 851 S.W.2d 510, 512–14 (1993). Missouri does not recognize a common law cause of action for wrongful death. *See Id.* at 516–15. Importantly, a wrongful death claim does not belong to the deceased. Rather, the right of action is created and vested in the survivor, here the plaintiff, at the moment of death. *See Id.* at 515–13. Mo.Rev.Stat. § 537.080 provides, in pertinent part:

Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for:

(1) By the spouse or children or the surviving lineal descendants of any deceased children, natural or adopted, legitimate or illegitimate, or by the father or mother of the deceased, natural or adoptive....

Section 537.085 provides:

On the trial of such action to recover damages for causing death, the defendant may plead and prove as a defense any defense which the defendant would have had against the deceased in an action based upon the same act, conduct, occurrence, transaction, or circumstance which caused the death of the deceased, and which action for damages the deceased would have been entitled to bring had death not ensued.

The key element of a wrongful death claim is that the defendant's negligence caused the decedent's death. *See In re Estate of Daly,* 907 S.W.2d 200, 201–02 (1995).

■ Missouri law does not recognize legal degrees of negligence. *See Fowler v. Park Corp.,* 673 S.W.2d 749, 755 (1984). A negligence claim is actionable only for the breach of a duty owed by the defendant to the plaintiff which causes injury to the plaintiff. *See Davidson v. Otis Elevator Company,* 811 S.W.2d 802, 803 (1991). The elements of a negligence claim under Missouri law are proof of the (1) existence of the defendant's duty to protect the plaintiff from injury, (2) the defendant's failure to perform that duty or breach of that duty, and (3) injury to the plaintiff resulting from such failure or proximate causation. *See Nappier v. Kincade,* 666 S.W.2d 858, 860 (1984); *Krause v. U.S. Truck Co., Inc.,* 787 S.W.2d 708, 710 (1990). Negligence is defined in terms of the duty owed by the defendant. *See Davidson,* 811 S.W.2d at 803. If the plaintiff fails to show the existence of a duty owed by the defendant, she cannot maintain a negligence cause of action. *See Andres v. Alpha Kappa Lambda Fraternity,* 730 S.W.2d 547 (1987). Here, the defendant, a common carrier, owed a duty of the highest degree of care. *See Strickland v. Taco Bell Corp.,* 849 S.W.2d 127, 131–32 (1993) (holding that recognizing whether a duty exits is a question of law for the court to decide).

■ With respect to the defendant's breach of that duty, the plaintiff points out that crew knew about the decedent's health problems immediately after the plane took off. The plaintiff alleges that the responsibility for determining a passenger's medical condition rests solely upon the defendant's employees. The plaintiff further alleges that the defendant's flight operations policy manual and its employees' testimony confirms those responsibilities as well as reveals that they deviated from both airline industry and the

defendant's own policies. To this end, the plaintiff has introduced testimony that demonstrates that the attendants failed to ask Captain Catlin to radio for medical assistance when the decedent failed to respond to usual care, abdicated their responsibilities to a possibly unqualified medical doctor, and did not complete and deliver a MedLink Patch Checklist to Captain Catlin. Similarly, the plaintiff has introduced testimony that Captain Catlin failed to contact MedLink for medical assistance and to timely divert the flight and land the plane. According to Nurse Sult's testimony that due to the lack of medical supplies and a quicker landing, the decedent "had no chance of surviving his medical emergency."

Conversely, the defendant argues that the evidence of record fails to demonstrate that the flight crew breached its duty of care. There are numerous factual disputes as to when the crew became aware of the decedent's condition, when Captain Catlin became aware of the decedent's condition at various stages of the flight, what the defendant's policies and practices provided, what the airline industry standards are, and the ultimate cause of the decedent's death. Clearly, there are numerous questions of fact that could lead a reasonable trier-of-fact to find that the defendant breached its heightened duty of care by (1) not properly treating the decedent, (2) breaching its own and airline practices and policies, (3) failing to land the plane in a timely manner, and (4) not providing additional medical equipment. In light of these facts the court finds that a reasonable jury could conclude that the defendant breached its heightened duty of care.

The third negligence element is proximate cause, which is the "causal connection between the actor's conduct and the resulting injury." *Jones v. Ames,* 901 S.W.2d 160, 163 (1995). The test for proximate cause is "simply whether, after the occurrence, the injury appears to be the reasonable and probable consequence of the act or omission." *Id.* The plaintiff's claims for wrongful death and negligence allege facts demonstrating that, but for the defendant's negligence in attending to his medical needs as a passenger and its failure to provide necessary medical equipment on its aircraft, the decedent would have survived his heart attack. The court finds that if a jury concludes the defendant breached its duty, then it could similarly conclude that the defendant's breach proximately caused the decedent's death.

Although both parties cite *Somes v. United Airlines, Inc.,* 33 F.Supp.2d 78 (D.Mass.1999) for various propositions, the court notes that the court in *Somes* did not address the narrow question of whether a jury could find that failing to supply defibrillators on airplanes constitutes negligence. Rather, the court in *Somes* held only that such a claim was not expressly preempted by the Airline Deregulation Act, the Federal Aviation Act or the regulations promulgated thereunder. *See generally* Airline Deregulation Act, Pub.L. No. 95–504, 92 Stat. 1705 (1978) (formerly codified at 49 U.S.C. § 1305(a)(1)); 49 U.S.C. § 4713(b)(1) (1998); Federal Aviation Administration Act, Pub.L. No. 103–305, 108 Stat. 1569 (1994) (recodified and amended the Airline Deregulation Act's preemption clause). Accordingly, this court notes that the *Somes* decision is neither binding precedent nor instructive on the issue of whether the defendant breached its heightened duty of care by not including an advanced medical kit and a defibrillator on its plane. Such a decision is squarely within the province of the jury. Despite the defendant's protestations that it did not breach any FAA standard of care, the court finds that a reasonable jury could conclude it "was not impossible for the defendant to comply with federal regulations and undertake additional safety measures" that necessar-

ily arise under its heightened duty of care. *Cleveland v. Piper Aircraft Corp.,* 985 F.2d 1438, 1445 (10th Cir.1993).

Because the court finds that there are sufficient disputed issues of material fact to survive summary judgment without addressing the issue, the court does not consider the defendant's argument that the plaintiff's expert's testimony is unreliable and should be stricken from the record.

For the foregoing reasons, the court hereby GRANTS the plaintiff's motion to file the affidavit of William Sult [Doc. No. 18–1] and motion for permission to file a supplemental brief opposing the defendant's motion for summary judgment Doc. [No. 25–1] and DENIES the defendant's motion for summary judgment [Doc. No. 13–1].